Frederick P. WURTENBERGER and Sylvia Wurtenberger, Plaintiffs,

v.

CUNARD LINE LIMITED and Francis J. McKenna, Defendants.

No. 72 Civ. 3171 HRT.

United States District Court,
S. D. New York.

Jan. 22, 1974.

Kenneth Heller, New York City, by Benjamin Hermatz, for plaintiffs.

White & Case by Rayner M. Hamilton and Norman Yoerg, Jr., New York City, for defendant Francis J. McKenna.

## OPINION

TYLER, District Judge.

This is a motion to dismiss, pursuant to F.R.Civ.P. 12(b)(2), for lack of jurisdiction over the person of Francis Joseph McKenna. For the reasons hereinafter stated, this motion is denied.

In February, 1971, McKenna was employed by Cunard Line, Ltd., as ship's surgeon aboard the Queen Elizabeth II ("QE2"). On February 13, 1971, the QE2 departed from the New York Harbor for a thirteen day cruise to the Caribbean. Plaintiffs, Frederick Wurtenberger ("Wurtenberger") and Sylvia Wurtenberger, were passengers on the cruise and, like the other passengers, boarded the QE2 in New York on February 13, 1971 and disembarked from it in New York on February 26, 1971. On this voyage, Wurtenberger was treated by McKenna for pain in his abdomen[1]

---

1. Wurtenberger states that he later found out that he had a ruptured appendix and peritonitis. Wurtenberger Affidavit ¶ 2.

and, according to Wurtenberger, he remained under the care of McKenna and this treatment continued until he left the ship. Wurtenberger Affidavit ¶ 2. McKenna, on the other hand, contends that according to the ship's medical records he only saw Wurtenberger on the 17th, 18th, 20th, 21st, 22nd, 23rd, 24th and 25th of February. McKenna Affidavit ¶ 3. Moreover, McKenna states that on none of the above dates was the QE2 within the territorial waters of New York. McKenna Affidavit ¶ 3. This position is supported by the applicable navigation records. Defendant's Exhibit B. McKenna is now being sued for his alleged negligence in rendering medical care to Wurtenberger aboard the QE2.

In July, 1973, McKenna was served with a summons and complaint at his residence in Dun Laughaire, Ireland. On October 4, 1973, pursuant to 28 U.S.C. § 1441(a), this action was removed from the New York County Supreme Court to this federal district court. McKenna now contends that this court has no jurisdiction over his person. He alleges that he has no business interests in New York, has never practiced medicine in this state, and, indeed, is not licensed to, and that he has only been to New York on four occasions in his life.

Plaintiffs have argued that the removal of this action to federal court by McKenna constituted a waiver of his right to assert the defense of lack of jurisdiction over his person. Under the Federal Rules of Civil Procedure, it is clear that a defense of lack of jurisdiction over the person is waived "if it is neither made by motion under this rule nor included in a responsive pleading. . . ." F.R.Civ.P. 12(h)(1). McKenna here has made such a motion. Plaintiffs assert, however, that New York State law is applicable and that under state law McKenna has waived his defense.

F.R.Civ.P. 81(c) specifically provides that the federal rules apply to civil cases removed to the federal court, and the courts have consistently held that federal law will be applied to the issue of waiver. Cain v. Commercial Publishing Co., 232 U.S. 124, 34 S.Ct. 284, 58 L.Ed. 534 (1914); Majerus v. Walk, 275 F.Supp. 952 (D.Minn.1967); Sun-X Glass Tinting, Inc. v. Sun-X International, Inc., 227 F.Supp. 365 (W.D.Wis.1964); Weinberg v. Colonial Williamsburg, Inc., 215 F.Supp. 633 (E.D.N.Y.1963). Cf. Freeman v. Bee Machine Co., 319 U.S. 448, 63 S.Ct. 1146, 87 L.Ed. 1509 (1943); Greenberg v. Giannini, 140 F.2d 550 (2d Cir. 1944); B. B. Weit Printing Co. v. Frances Denney, Inc., 300 F.Supp. 405 (S.D.N.Y.1969); 1A J. Moore Federal Practice, ¶ 0.168 at 1383. Moreover, it would appear that even according to the law of New York State, McKenna's action of filing removal papers would not be considered to be a waiver of his defense of lack of jurisdiction of the person, since his time for serving responsive pleadings had not expired and he had made none of the motions mentioned in Rule 3211(a) of N.Y. Civil Practice Law and Rules, C.P.L.R. (McKinney). See Rule 3211(e), C.P.L.R. (McKinney). McKenna, therefore, has not waived his right to move for dismissal for lack of *in personam* jurisdiction.

Plaintiffs have not alleged that McKenna is a New York domiciliary or that he would be subject to *in personam* jurisdiction under C.P.L.R. § 301 (McKinney). They do argue, however, that jurisdiction is proper under New York's so-called "long arm statute", C.P.L.R. § 302(a).[2] As counsel for

2. Section 302(a) states that:
"As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state; or
2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
3. commits a tortious act without the state causing injury to person or property

McKenna points out, and as is implicitly recognized by plaintiff, subsections 2, 3 and 4 of § 302(a) do not give this court jurisdiction. McKenna does not appear to have any relationship to any property in New York and, in any event, his alleged malpractice had no connection with New York property. The "tortious acts" in question occurred outside the state and § 302(a)(2) is thus not applicable.[3] Feathers v. McLucas, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68, cert. denied, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965). This is true even though the alleged injury may have come to rest in New York. Gildenhorn v. Lums Inc., 335 F.Supp. 329 (S.D.N.Y.1971), rev'd on other grounds sub. nom., Schein v. Chasen, 478 F.2d 817 (2d Cir. 1973), cert. granted, 414 U.S. 1062, 94 S.Ct. 568, 38 L.Ed.2d 467 (1973); Feathers v. McLucas, supra. Subsection 302(a)(3) is not applicable because Wurtenberger was injured outside the State, not within the State. Crimi v. Elliot Bros. Trucking Co., 279 F.Supp. 555 (S.D.N.Y.1968); Wilcox v. Pennsylvania R. R., 269 F.Supp. 326 (S.D.N.Y.1967); Black v. Oberle Rentals, Inc., 55 Misc.2d 398, 285 N.Y.S.2d 226 (Sup.Ct. Onondaga Co. 1967). In any case, it does not appear that the further requirements of § 302(a)(3)(i) or (ii) were met.

Although McKenna in his affidavit states that he has been in New York on only four occasions, there can be no doubt that McKenna "transacted business" within the state as defined in § 302(a)(1).[4] Hi Fashion Wigs v. Peter Hammond Advertising, Inc., 32 N.Y.2d 583, 347 N.Y.S.2d 47, 300 N.E.2d 421 (1973); Parke-Bernet Galleries Inc. v. Franklyn, 26 N.Y.2d 13, 16, 308 N.Y.S. 2d 337, 339, 256 N.E.2d 506, 507 (1970). He was the ship's surgeon aboard the QE2 when she departed from New York Harbor on February 13, 1971 and returned thereto on February 26. Although he was not licensed to practice medicine in New York, he was a member of the crew of the QE2 and, as such, presumably continued to perform his duties while the ship was in the New York Harbor. McKenna, therefore, has purposefully availed himself "of the privilege of conducting activities within the forum State". Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).[5] Under § 302(a)(1), however, nondomiciliaries are not necessarily subject to in personam jurisdiction merely because they transact isolated acts of business in the forum State. In addition, the claim or cause of action in question must arise out of this transaction of business; this is the key issue here.

within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state; or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state."

3. In plaintiffs' brief, jurisdiction over McKenna is alleged only on the basis of § 302(a)(1). It should be noted, however, that plaintiffs contend that Wurtenberger continued to be in McKenna's care until the ship returned to New York. Plaintiffs' Affidavit ¶ 2. Although McKenna states to the contrary, it may be the case, therefore, that

some of the malpractice in question occurred within New York. If this is true, it could be argued that there is jurisdiction under § 302(a)(2) because an allegedly tortious act was committed within the state. Fortunately, this court does not have to resolve this factual issue presently since, as shown hereinafter, jurisdiction exists under § 302(a)(1).

4. Subsection 302(a)(1) is applicable to torts arising out of the transaction of business in New York as well as to commercial situations. See, e. g. Singer v. Walker, 15 N.Y. 2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68, cert. denied, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed. 2d 158 (1965).

5. Wright v. Yackley, 459 F.2d 287 (9th Cir. 1972), is inapposite because there the defendant doctor merely sent a prescription into the non-forum state.

Concededly, McKenna was physically present on February 13, 1971 in New York as ship's surgeon aboard the QE2. To the passengers who boarded the QE2 that day in New York for a short cruise of thirteen days, McKenna, in effect, held himself out as a qualified doctor who would treat any medical problems they might have on the cruise. Although McKenna doubtless made no explicit representations, it would seem likely that many of the people who decided to go on the cruise and cut themselves off, albeit temporarily, from all land based medical services, only agreed to do this because they knew that competent medical care was available. The alleged subsequent malpractice in the course of the cruise, therefore, while it did not occur in New York, may be said to have arisen out of McKenna's "transaction of business" in New York. Furthermore, in view of the fact that the cruise started and ended in New York, it was entirely foreseeable that any malpractice might have an effect on a New York resident.

Finally, it is relevant to consider the fact that New York has an interest in providing its residents a convenient forum in which to seek redress for injuries done to them by foreign citizens. If jurisdiction were improper here, plaintiffs might well have to go to Ireland to sue McKenna. Moreover, defendant Cunard Line, Ltd., the owner of the QE2, was qualified to do business in New York at the time of the alleged malpractice, and Wurtenberger went directly from the QE2 to a New York hospital. New York would seem, therefore, to be the forum which has the closest relationship to this suit.[6]

Since this court has jurisdiction over the person of McKenna, pursuant to § 302(a)(1), the motion to dismiss is denied. It is so ordered.

6. These facts distinguish this case from a case such as McKee Electric Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 283 N.Y.S. 2d 34, 229 N.E.2d 604 (1967), in which jurisdiction was denied in part because a "dismissal for lack of jurisdiction . . . would work no undue hardship." 30 N.Y.2d 377, 383, 283 N.Y.S.2d 34, 38, 229 N.E.2d 604, 607.