Joan HUTTON and Foster Hutton, Plaintiffs,

v.

David PIEPGRAS, M.D., Robert Siekert, M.D., Mayo Clinic and St. Mary's Hospital, Defendants.

No. 77 Civ. 5793 (KTD).

United States District Court, S. D. New York.

May 4, 1978.

Eaton, Van Winkle, Greenspoon & Grutman, New York City, for plaintiffs; by Norman Roy Grutman, Jeffrey H. Daichman, Gary A. Woodfield, New York City, of counsel.

Breed, Abbott & Morgan, New York City, for defendants; by C. MacNeil Mitchell, H. Barry Vasios, New York City, of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Plaintiffs are New York residents who commenced this diversity action to recover damages for medical malpractice and loss of services arising out of plaintiff Joan Hutton's care and treatment by defendants Doctors Piepgras and Siekert while plaintiff was a patient at Mayo Clinic and St. Mary's Hospital, non-profit Minnesota corporations and also defendants herein, in Rochester, Minnesota from April to June

1977. Defendants, Minnesota residents who were served with process in Minnesota, have moved to quash service of process and to dismiss this action for lack of *in personam* jurisdiction.

It is undisputed that all defendants are Minnesota residents, that the individual defendants are licensed to practice medicine and surgery only in Minnesota, that neither the individual nor corporate defendants maintain offices, facilities, employees or the like in New York, and that Joan Hutton's injuries occurred in Minnesota. Plaintiffs nevertheless assert that jurisdiction properly may be exercised over the persons of defendants by virtue of either New York's "doing business" test,[1] *see* N.Y.C.P.L.R. 301, or New York's "long arm" statute, N.Y.C. P.L. 302(a),[2] pursuant to which out-of-state service of process, such as was here effected, is authorized. N.Y.C.P.L.R. 313.[3]

Plaintiffs have the burden of establishing the basis for the exercise of *in personam* jurisdiction over defendants. *Masonite Corp. v. Hellenic Lines, Ltd.*, 412 F.Supp. 434, 437 (S.D.N.Y.1976); *see McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). I note at the outset that plaintiffs have proffered no facts which arguably would indicate the propriety of exercising jurisdiction under either asserted theory[4] over the persons of Doctor Piepgras, Doctor Siekert or St. Mary's Hospital. Consequently, the motion to dismiss as to these defendants is granted, and the discussion which follows is addressed solely to

whether defendant Mayo Clinic can be compelled to answer plaintiffs' claims in this forum.

To satisfy their burden with respect to jurisdiction under the long-arm statute, plaintiffs contend that their claims arose out of the transaction of business in New York, within the meaning of N.Y.C.P.L.R. 302(a)(1), by virtue of the New York activities of one Dr. Paul Marcoux acting as Mayo Clinic's agent. To support this theory, plaintiffs have submitted affidavits attesting that for some years prior to Joan Hutton's Minnesota hospitalization, she had been suspected by local doctors of suffering from a rare and progressive degenerating neurological disorder known as syringomyelia. It is further asserted that Dr. Paul Marcoux, an allergist and staff physician at Mayo Clinic, had telephoned her in late March 1977 while he was in New York attending a medical conference to suggest that she seek help at the Mayo Clinic. According to plaintiffs, Dr. Marcoux, although not a neurologist, knew of plaintiff's condition after discussing it with Mrs. Hutton's brother, a friend and former patient of Dr. Marcoux's. Plaintiffs additionally claim that after such discussions and prior to his contacting Mrs. Hutton, Dr. Marcoux brought her case to the attention of his neurological colleagues at Mayo Clinic and ascertained their interest in treating her. Apparently Dr. Marcoux and plaintiff engaged in more than one telephone conversation in New York, and plaintiff attests that during these conversations Dr. Marcoux

---

1. *See, e. g., Gelfand v. Tanner Motor Tours, Ltd.*, 385 F.2d 116 (2d Cir. 1967), *cert. denied*, 390 U.S. 996, 88 S.Ct. 1198, 20 L.Ed.2d 95 (1968); *Frummer v. Hilton Hotels International, Inc.*, 19 N.Y.2d 533, 281 N.Y.S.2d 41, *cert. denied*, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967); *Taca International Airlines, S.A. v. Rolls-Royce, Ltd.*, 15 N.Y.2d 97, 256 N.Y.S.2d 129, 204 N.E.2d 329 (1965); *Bryant v. Finnish National Airline*, 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965); *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 115 N.E. 915 (1917).

2. That portion of N.Y.C.P.L.R. 302(a) upon which plaintiffs rely provides:

(a) *Acts which are the basis of jurisdiction.* As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
    1. transacts any business within the state;
    . . . .

3. These provisions are applicable by virtue of Rules 4(d)(7) and (e), F.R.Civ.P.

4. New York's "doing business" test, historically one directed at corporations, has been applied to individuals. *ABKCO Industries, Inc. v. Lennon*, 52 A.D.2d 435, 384 N.Y.S.2d 781 (1st Dep't 1976), *aff'g* 85 Misc.2d 465, 377 N.Y.S.2d 362 (Sup.Ct.1975).

delved into her medical history and expressed an interest in her condition on behalf of his neurological brothers, and that on the basis of their exchanges, he arranged for her expedited admission to Mayo Clinic, a step that assertedly she otherwise would not have taken.

It is undisputed that Dr. Marcoux at no time met, examined or treated plaintiff either in New York or Minnesota, that neither he nor the Mayo Clinic received a fee as a result of these conversations and that plaintiff was not actually admitted to Mayo Clinic or St. Mary's Hospital until she arrived in Minnesota. It is plaintiffs' position, however, that Dr. Marcoux actively recruited and solicited Joan Hutton as a patient on Mayo Clinic's behalf and that their New York conversations created a physician-patient relationship, attributable to that defendant, which later resulted in the injuries forming the basis of this lawsuit.

Defendants dispute the factual underpinnings of plaintiffs' position. Notably, Dr. Marcoux has attested that he attended the New York medical conference—a meeting of the American Congress of Allergy—in his private capacity as an allergist and not as a representative of Mayo Clinic, that he at no time indicated that members of the Mayo Clinic's Neurology Department were interested in treating Joan Hutton because of her rare condition and that he called Mrs. Hutton at her brother's urging purely as a favor to a friend. Additionally, Dr. Marcoux swears that he was not authorized to solicit business for Mayo Clinic and to do so would be a breach of both his and Mayo Clinic's policy. It is unnecessary to resolve these factual issues, for the exercise of 302(a)(1) jurisdiction over defendant would be improper even were the facts to be viewed in plaintiffs' favor.

It is settled that N.Y.C.P.L.R. 302(a)(1) applies to torts as well as to commercial claims arising out of the transaction of business in New York. *See e. g., Singer v. Walker*, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68, *cert. denied*, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965); *Wurten-*

*berger v. Cunard Line Ltd.*, 370 F.Supp. 342 (S.D.N.Y.1974). The test for satisfying 302(a)(1) is essentially a two-fold one: The quality of the New York contact must be of such nature that a non-resident defendant can be deemed to have purposefully invoked the benefits and protection of New York law in satisfaction of due process, *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *George Reiner & Co. v. Schwartz*, 41 N.Y.2d 648, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977), and the claim in question must arise out of that purposeful New York activity. *Compare Wurtenberger v. Cunard Line Ltd., supra, with Masonite Corp. v. Hellenic Lines, Ltd., supra.*

Plaintiffs appear to contend that Dr. Marcoux's New York conversations with Joan Hutton constitute purposeful activity in this state attributable to Mayo Clinic because Dr. Marcoux was present here to attend a medical conference on Mayo Clinic's behalf, and because he initiated a patient-physician relationship between Joan Hutton and Mayo Clinic by previously discussing her case with Mayo Clinic neurologists, suggesting that she apply for admission and aiding her expeditious admission to that institution. However, the capacity in which Dr. Marcoux attended the New York conference is irrelevant, since that contact is totally unrelated to plaintiffs' claims. While plaintiffs insist that a relationship was created in New York which resulted in Joan Hutton's injuries, the tenuous nature of that contention on several fronts renders it unpersuasive. Firstly, there is no indication that Dr. Marcoux was acting on Mayo Clinic's behalf in contacting, conversing with or making arrangements for plaintiff, even had his neurological colleagues been consulted about Mrs. Hutton's case. Indeed, Dr. Marcoux has attested that he was not authorized to solicit business for Mayo Clinic and to do so would be in violation of that defendant's policy. In light of this, his activities could hardly be viewed as a creation of a physician-patient relationship between Mayo Clinic and Joan Hutton, particularly since, according to plaintiffs, he merely received a telephonic sketch of her

medical history and symptoms and simply suggested she seek aid from other physicians at Mayo Clinic, gratuitously arranging her accommodations at that institution. *Cf. Sangdahl v. Litton*, 69 F.R.D. 641 (S.D.N.Y. 1976) (non-resident defendant physician consulted professionally in his offices in New York, where he was licensed to practice medicine).

In any event, the New York contacts here presented are not sufficiently purposeful under 302(a)(1) to compel Mayo Clinic to answer plaintiffs' claims here consistent with due process. Plaintiffs rely on *Wurtenberger v. Cunard Line Ltd., supra*, and *Sangdahl v. Litton, supra*, in which the exercise of 302(a)(1) jurisdiction was sustained over non-resident physicians who, as a result of the rendering of out-of-state medical care, where the subject of malpractice claims. *Wurtenberger* is simply inapposite (Irish defendant who served as ship surgeon during a thirteen-day cruise which began and ended in New York and during which the plaintiff's injuries occurred). In *Sangdahl*, the gravamen of the complaint was not only a breach of a duty of care which arose out of a New York physician-patient relationship founded on a more substantial basis than is here indicated, *see supra* at 7, but also a breach of express representations with respect to the proposed surgery and course of treatment made by the defendant at his New York office. No such comparable contacts are here present. To hold that Mayo Clinic, on the basis of Dr. Marcoux's gratuitous and insubstantial acts, transacted business in New York out of which plaintiffs' claim arose would simply be unreasonable.

Alternatively, plaintiffs argue that defendant Mayo Clinic is subject to jurisdiction under New York's "doing business" test. *See* N.Y.C.P.L.R. 301. Under that formulation, this foreign corporation would be deemed present in New York for purposes of suit if it does local business "not occasionally or casually, but with a fair measure of permanence and continuity" regardless of whether the cause of action arose out of that business. *Tauza v. Sus-*

*quehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915 (1917).

Plaintiffs assert that Mayo Clinic's presence in New York is manifested by its active solicitation of patients and funds, evidenced by the following: (1) its arrangement with Grumman Aviation Corporation, as well as other unnamed New York corporations, to provide corporate executives with medical care and treatment; (2) its solicitation and receipt of nationwide charitable contributions; (3) its open laboratory facilities available nationwide through the use of computers and toll-free telephone service; and (4) its nationwide circulation of free medical publications. Defendant disputes that it solicits patients in New York or elsewhere, or that it provides more than a negligible amount of services to New Yorkers. It additionally claims that no New York corporation other than Grumman Aviation partakes of the arrangement referred to and that the medical care rendered to Grumman executives takes place in Minnesota, with the bills for such services mailed from that state. Taking plaintiffs' assertions as true, however, they are legally insufficient to constitute Mayo Clinic's doing business in New York.

It is settled that the mere solicitation of business in New York does not constitute a jurisdictional presence in this state. *Delagi v. Volkswagenwerk AG of Wolfsburg*, 29 N.Y.2d 426, 328 N.Y.S.2d 653, 278 N.E.2d 895 (1972); *Miller v. Surf Properties*, 4 N.Y.2d 475, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958). This result would not be changed by the fact that services were provided New Yorkers, since, by comparison, it is established that sales from an out-of-state manufacturer into New York—a much clearer case than is here—would not make that manufacturer amenable to suit in New York. *See Delagi, supra; Baird v. Day & Zimmerman*, 390 F.Supp. 883 (S.D.N.Y.1974), *aff'd*, 510 F.2d 968 (2d Cir. 1975). Plaintiffs have simply failed to show any activity of Mayo Clinic in New York sufficient to deem that defendant "present."

I note that plaintiffs have requested leave to conduct discovery on the jurisdictional issues here presented in the event that defendants succeed, as they have, on their motion to dismiss this action for lack of *in personam* jurisdiction. In view of the fact that plaintiffs have failed to set forth any facts which would arguably justify their request, such discovery would be merely a fishing expedition in murky waters. I have great sympathy for the plight of the plaintiffs, but the law is clear that the matter must be dismissed. Any further delay can only work to the detriment of plaintiffs by inhibiting them from bringing suit before some tribunal where jurisdiction would properly lie.

Accordingly, defendants' motion to quash service of process and dismiss this action is granted.

SO ORDERED.