**Matthew B. KREPPS, Plaintiff,**

v.

**Edward REINER and Insead, Defendants.**

No. 05 Civ. 0107(RWS).

United States District Court, S.D. New York.

Feb. 8, 2006.

---

Matthew Krepps, Roslindale, MA, Plaintiff pro se.

Piliero Goldstein Kogan & Miller, By: Michael C. Miller, of counsel, New York, NY, for Defendant Insead.

## OPINION

SWEET, District Judge.

Defendant Insead has moved for entry of an order of dismissal in this action

initiated by *pro se* plaintiff Matthew B. Krepps ("Krepps"). For the reasons set forth below, the motion is granted.

### Prior Proceedings

By order and opinion of July 27, 2005 (the "July 27 Opinion"), this Court granted the motion of Insead to dismiss this action (the "Krepps II Action") for lack of personal jurisdiction and due to insufficient service of process. *See Krepps v. Reiner*, No. 05 Civ. 0107(RWS), 2005 WL 1793540 (S.D.N.Y. July 27, 2005). Because of Krepps' *pro se* status, he was given an additional period of time to submit any factual material or to initiate any jurisdictional discovery to support a *prima facie* showing that jurisdiction exists. *See id.* at *6. The July 27 Opinion held that Krepps had failed to establish that Insead has a corporate presence in New York, that this Court possesses long-arm jurisdiction over Insead, or that Insead engaged in tortious conduct in New York such that Insead might be subject to the jurisdiction of this Court. Having completed additional jurisdictional discovery, Krepps submitted his opposition to the entry of judgment.

The motion was marked fully submitted on November 16, 2005.

### Jurisdiction Has Not Been Established

■ Plaintiff bears the burden of establishing that the court has jurisdiction over a defendant when served with a Rule 12(b)(2) motion to dismiss. *DiStefano v. Carozzi North America Inc.*, 286 F.3d 81, 84 (2d Cir.2001); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir.1994). Because an evidentiary hearing has not been held, the plaintiff need only make a *prima facie* showing of jurisdiction through the complaint's allegations and affidavits in order to defeat the motion to

dismiss. *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986); *Network Enterprises, Inc. v. APBA Offshore Prods., Inc.*, 01 Civ. 11765(CSH), 2002 WL 31050846, at *8 (S.D.N.Y. Sept. 12, 2002). The facts must be construed in the light most favorable to plaintiffs. *Cooper, Robertson & Partners L.L.P. v. Vail*, 143 F.Supp.2d 367, 370 (S.D.N.Y.2001) (citing *Hoffritz for Cutlery Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985)).

Nothing submitted by Krepps since the July 27 Opinion was issued has changed the bedrock fact that this Court lacks jurisdiction over Insead.

### INA

Krepps has claimed that personal jurisdiction exists over Insead due to its relationship with INA, a New York not-for-profit corporation.

■ INA is an independent New York State not-for-profit corporation formed in 2000 under Section 402 of New York's Not–for–Profit Corporation Law. (*See* Declaration of Leonard J. Bencivenga at ¶ 2) (hereinafter referred to as "Bencivenga Decl.").[1] While INA was established to exclusively support the education mission of Insead, and its sole member is Insead, its sole function is to serve as a conduit organization for Insead by receiving funds from Insead and disbursing these funds in U.S. dollars to professors in the United States who guest-lecture at Fontainebleau. (*Id.*)

INA engages in no other business. (*Id.* at ¶ 4.)

INA has no employees in New York or elsewhere. (*Id.*) In fact. INA's payments to professors are all issued by its accountants at Bencivenga Ward & Company

---

**1.** *See* Declaration; of Michael C. Miller, Ex. A ("Miller Declaration"). The declarations of Richard Rondoux, Sarah Robertson, Jane Sommers–Kelly, and Jill Huret are attached as Exhibits B through E, respectively, to the Miller Declaration and will be cited herein by the name of the declarant (*e.g.*, Rondoux Decl.).

("Bencivenga"). (*Id.*) INA does not offer any product or service for sale in New York. (*Id.*) INA does not own, rent or otherwise occupy any physical space in New York. (*Id.*) Indeed, contrary to Krepps' allegations, neither Insead nor INA has office space at either 205 East 42nd Street or 900 Third Avenue. Until February 2004, the 205 East 42nd Street office was occupied by Bencivenga, and neither Insead nor INA ever paid any rent to Bencivenga or occupied Bencivenga's space. (*Id.*) The 900 Third Avenue address is the home of Worms & Company, Inc., a merchant bank which agreed to accept service of process for INA from New York State's Secretary of State. (*See* Rondoux Decl. at ¶4.) Over the past six years, Insead hired, and INA paid through Bencivenga, only twelve New York-based professors for guest lecturing assignments—one in 2000, five in 2001, two in 2002, none in 2003, and two each in 2004 and 2005.(*Id.*)

Essentially, INA has performed the function of a New York bank dispensing sums at the direction of Insead to pay New York-based professors for teaching in France. Insead's purchase of the services of these professors, who clearly offer their talents to the international market of high-end academic institutions, does not subject Insead to the jurisdiction of this Court. *Hastings v. Piper Aircraft Corp.*, 274 A.D. 435, 438–39, 84 N.Y.S.2d 580 (1st Dep't 1948).

### Residence of Professor Walter

■ Krepps also has alleged that Insead employees reside or work in New York, based on the fact that Professor Ingo Walter ("Walter"), who occasionally teaches at Insead, has an office in New York. This fact is neither surprising, nor evidence that Insead has a corporate presence in New York. Walter has been a member of the faculty of the New York University Stern School of Business since 1970. (*See* Rondoux Decl. at ¶5.) He is presently the Seymour Milstein Professor of Finance, Corporate Governance and Ethics at the Stern School of Business and the Director of the Stern Global Business Institute. (*Id.*) His work address is that of the Stern School of Business, Kaufman Management Center. He lives in Upper Montclair, New Jersey. (*Id.*)

Walter's presence at NYU and his residence in New Jersey does not establish that Insead is conducting business in New York.

### Morgan Guaranty Trust

■ Krepps has alleged that this Court possesses jurisdiction over Insead because it has a bank account at a New York branch of Morgan Guaranty Trust. Insead sends funds to the Morgan Guaranty Trust account to pay U.S. dollars to U.S. individuals and entities providing goods or services to Insead in France. (*See* Rondoux Decl. at ¶8.) One of those U.S. based service providers was The Economist's Advocate ("EA"), Krepps' corporate alter ego, and the plaintiff in the trial held before this Court last fall (the "Krepps I Action"). The funds in this account come from Insead in France—not from customers of Insead located in the United States. (*Id.*)

■ The maintenance of a bank account in New York by a nondomiciliary does not subject the nondomiciliary to the jurisdiction of New York courts. *See Hastings*, 274 A.D. at 438, 84 N.Y.S.2d 580. "[F]inancial activity in a forum which is unrelated to any systematic business conducted in that forum is generally insufficient for jurisdictional purposes." *Dardana Ltd. V. A.O. Yuganskneftegaz*, No. 00 Civ. 4633(DAB), 2001 WL 1131987, *3 (S.D.N.Y. Sept.24, 2001), *vacated on other grounds by Dardana Ltd. v. Yuganskneftegaz*, 317 F.3d 202 (2nd Cir.2003); *see also First City Nat'l Bank and Trust Co.*

*v. Zuckerman,* 682 F.Supp. 182, 183 (S.D.N.Y.1987) (finding no personal jurisdiction even where "defendant borrowed money from a New York bank, agreed to provide financial information to that bank, agreed to repay the loan in New York, agreed that the note would be governed by New York law, and directed that the money be paid to a third-party"). Insead's maintenance of a bank account in New York to pay U.S. dollars to some of the individuals and entities who provide services to Insead in France does not confer jurisdiction here on Insead.

### Citigroup Foundation

■ Krepps has alleged that Insead "appears to engage in ongoing business and public relations work in New York through its partnership with the Citigroup Foundation." (Krepps Memo at 3.) Insead and the Citigroup Foundation were both involved in organizing a conference in Hong Kong on November 2, 2004 to address financial education for women. (*See* Rondoux Decl. at ¶ 9.) The conference was funded by a grant from the Citigroup Foundation, co-organized by Citigroup and Insead, and managed by *The Financial Times.* (*Id.*) The one-day interactive forum was designed to promote the exchange of knowledge and ideas to expand financial education for women in Asia Pacific. (*Id.*) These activities have nothing to do with allegations in the Krepps II Action and do not confer jurisdiction in New York over Insead.

### WIMBA

■ Krepps has alleged that Insead "appears to be selling my copyrighted material through WIMBA ... whose corporate headquarters are at 520 8th Avenue, Suite 2300, New York, New York." (Krepps Memo at 3.) WIMBA has never had a contract to sell Insead courses in the United States of elsewhere. (*See* Rondoux Decl. at ¶ 10.) WIMBA is a voice technol-ogy system that Insead bought in March 2001.(*Id.*) As even the documents attached to the Krepps Memo confirm, WIMBA's technology had nothing to do with Insead's efforts to sell its online courses. (*See* Krepps Memo at Ex. 12) ("INSEAD's On-Line courses and web-based platform are built on Docent technology [and are] integrated with features from other best in class technology suppliers, such as Centra, HyperOffice and Wimba.") Insead entered into a contract with WIMBA, a start-up venture headquartered in France in 2001. (*See* Rondoux Decl. at ¶ 10.) Indeed, the contract between Insead and WIMBA is written in the French language and identifies WIMBA's headquarters as: Espace Beethoven, Batiment 2B, 1200 Route des Lucioles, 06560, Sophia–Antipolis, France. (*Id.*) Insead's dealings with WIMBA offer no proof that Insead has a corporate presence in New York.

### MBA Fairs

■ Krepps has alleged that Insead has submitted to the jurisdiction of this Court because it periodically attends MBA fairs, and because, "in September [2005] alone, Insead will host two events in New York to generate business." (Krepps Memo at 4.) However, the solicitation of business in New York does not constitute a jurisdictional presence in this state. *See Hutton v. Piepgras,* 451 F.Supp. 205, 209 (S.D.N.Y.1978). In addition, the two events Krepps is referring to, the World MBA Forum and the Forte Forum, are one-day forums where Insead occupies a booth to meet with potential MBA candidates and disseminate information. (*See* Krepps Memo at Ex. 14.) According to the website for the World MBA Forum noted in Exhibit 14 to Krepps Memo (*www.topmba.com*), 214 MBA programs participated in its North American forums in 2005. (*See* Rondoux Decl. at ¶ 11.)

### Fundraising

[11] Krepps has alleged that Insead "appears to solicit funds regularly in New York." (Krepps Memo at 4.) While Insead does engage in fundraising activity in New York, this activity has not risen to the level of a "continuous and systematic course of business" warranting a finding of "presence" in this jurisdiction. *See Krepps v. Reiner*, 2005 WL 1793540 at *3; *see also Hutton*, 451 F.Supp. at 209 ("It is well settled that the mere solicitation of business in New York does not constitute a jurisdictional presence in this state.").

Only one employee of Insead, presently Sarah Robertson, is assigned responsibility for focused fundraising activity throughout the United States and Canada. Since January 2003, Ms. Robertson and her predecessor visited approximately nineteen times with specific individuals in New York and twenty-one times with corporations. These numbers actually overstate Insead's efforts in New York, since many of these visits were repeat meetings with the same individuals and corporations.

[12] Insead also engages in a broad appeal for donations through the Insead Alumni Fund, which sends approximately two letters and places one phone call to each of its alumni throughout the world each year, including those in New York. The blanket distribution of these letters and phone calls throughout the world, without any purposeful contact with New York residents specifically, is insufficient for establishing personal jurisdiction. *See Novak v. Petsforum Group, Inc.*, No. 02 Civ. 2978(DLI), 2005 WL 1861778, *2 (E.D.N.Y. Aug.1, 2005); *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454–55 (3d Cir.2003).

Donations to Insead from U.S. donors are received by The Insead Management Education Foundation ("IMEF").[2] IMEF does not engage in any fundraising activity, but only monitors Insead's use of donor funds to ensure that Insead uses funds in the manner donors have requested and that Insead's financial statements regarding use of donor money are transparent. (*See* Robertson Decl. at 5.) IMEF is not controlled by Insead. (*Id.*) It was incorporated by Insead alumni in the State of Delaware on October 6, 1966, and its Board of Trustees includes Tom Berry, CEO of Zepher Management, and six United States-based alumni of Insead. (*Id.*) No Insead employee serves on IMEF's Board. (*Id.*) IMEF itself has *de minimus* contact with New York. IMEF's founders designated an address in Delaware as the location of its principal office. (*Id.* at ¶ 12.) IMEF also maintains its bank account at the Bank of America in Baltimore, Maryland, and requests that wire transfers be sent directly into this account. (*See* Krepps Memo Ex. 16.)

The event held at South Street Seaport referenced by Krepps, (*see* Krepps Memo at 4), was organized by Insead alumni through the Insead Alumni Association with guidance from Insead. The purpose of this event was to support Insead's Capital Campaign drive, which is seeking funds to support Insead's campuses in Fontainebleau and Singapore.

Insead's world-wide fundraising efforts simply do not provide sufficient contacts with New York to confer personal jurisdiction on Insead.

### Long–Arm Jurisdiction

[13] Krepps also has alleged that this Court has jurisdiction over Insead with

---

2. Until 1997, IMEF was known as The International Management Education Foundation.

(*See* Rondoux Decl. at ¶ 12).

respect to Krepps' claims for *quantum meruit*, unjust enrichment and copyright infringement based on long-arm jurisdiction.

Krepps has asserted that his *quantum meruit* claim arises "because Insead refused to pay me for the work I did for them with their purposefully chosen New York business partner and agent Cognitive Arts." (Krepps Memo at 5.) Krepps's current *quantum meruit* claim is predicated on the notion that he provided the services for which he seeks payment directly to Insead. (*See* Krepps Memo, Ex. 21 at ¶ 52.) Whether Krepps worked with or without Cognitive Arts on Insead's online courses does not relate to his *quantum meruit* claim.

Krepps has asserted that his unjust enrichment and copyright infringement claims both arose because Insead allegedly took Krepps's intellectual property from Cognitive Arts. Krepps's unjust enrichment claim asserts that he provided his intellectual property to Insead, and that Insead retained this intellectual property without paying Krepps. Cognitive Arts is irrelevant to Krepps' claims for unjust enrichment or copyright infringement in the Krepps II Action.

Krepps also has claimed that long-arm jurisdiction is applicable to Insead because Insead allegedly licensed his intellectual property to Cognitive Arts in New York and paid Cognitive Arts royalties on this intellectual property. These contacts with New York do not constitute sufficient contacts for purposes of establishing personal jurisdiction.

Krepps has asserted that Insead sought out Cognitive Arts as a business partner, (*see* Krepps Memo at 5), when, as the trial in Krepps I established, Krepps entered into a joint-venture agreement with Cognitive Arts before he introduced EA to Insead and promoted Cognitive Arts to Insead as a partner. Krepps also has claimed that Cognitive Arts was Insead's agent, when, in fact, the Court held that Cognitive Arts was Insead's agent solely for purposes of negotiating the termination agreement with Krepps, a series of events occurring well after the time Krepps allegedly provided the services to Insead for which he now claims compensation.

Finally, Krepps has claimed that Insead "did not object to personal jurisdiction based on the copyright infringement claim or under Section 302(a)(2)." (Krepps Memo at 6–7.) In fact, on June 7, 2005, after Krepps filed his amended complaint adding the copyright infringement claim, Insead filed a supplemental memorandum of law in support of Insead's motion to dismiss the Krepps II action and motion for sanctions ("Insead's Supplemental Memo"), which contained a section entitled, "This Court Lacks Personal Jurisdiction Over insead." In addition, Insead specifically incorporated by reference into Insead's Supplemental Memo all of the facts and legal arguments contained in Insead's four briefs filed in support of its motions to dismiss and for sanctions, which include extensive discussion of the reasons why this Court lacks jurisdiction over Insead. Insead has consistently contended that this Court lacks personal jurisdiction over Insead with respect to the Krepps II Action.

### *New York–Based Consumer*

■ Krepps also has claimed that Insead sold at least one copy of the Industry Scan course to a consumer in New York and that Insead thereby submitted to the jurisdiction of this Court. Only five U.S.-based consumers ever purchased the Industry Scan course, and none of the five is a resident of New York. (*See* Declaration of Jane Sommers–Kelly (hereinafter "Kelly Decl.") at ¶ 2.)

Krepps has pointed to an invoice issued by Insead in December 2003 to AXA Fi-

nancial ("AXA") in New York as "proof" that Insead solicited sales of its Industry Scan course in New York. The invoice correctly reflects that an AXA employee, Janet Farina, took this course. What the invoice does not reflect is that Ms. Farina was a participant in a September 2003 AXA Telemaque Programme ("Programme") run in France by a not-for-profit academic institute, the European Centre for Executive Development ("CEDEP"). (*See* Declaration of Jill Huret (hereinafter "Huret Decl.") at 2.) Ms. Farina missed the first module of the Programme, which included sessions by Professor Karol Cool, an Insead professor and an author of the Industry Scan online course, who CEDEP had hired from Insead to help with the Programme. (*Id.*) To permit Ms. Farino to catch up, AXA contacted Insead to arrange for Ms. Farina to take the Industry Scan course online. (*Id.*) Insead did not solicit this business from AXA in New York or anywhere else for that matter. (*Id.*) The AXA invoice does not establish that Insead engaged in tortious conduct in New York.

Not only has Insead not sold the Industry Scan course to a consumer in New York, it would not be subject to the jurisdiction of this Court because, as the Court held in its July 27 Opinion, "to obtain jurisdiction under this section, the defendant must have been physically present in New York while committing the tort." *Krepps v. Reiner*, 2005 WL 1793540 at *5.

Krepps also has claimed that Insead conducts business over the Internet by sending computer files related to the Industry Scan course to consumers in New York. As discussed above, Krepps has not established that Insead has caused computer data to be sold in New York which in itself would not constitute doing business here.

### Proper Service Of Process Has Not Been Made

The Hague Service Convention governs service of process upon entities located in signatory countries. *See* Fed.R.Civ.P. 4(f)(1). France is a signatory country, and Insead is a French entity. Krepps has failed to demonstrate that his efforts to serve either the complaint or the amended complaint on Insead satisfy the Hague Convention.

### Conclusion

Based on the foregoing, Krepps has failed to establish a basis for not entering the judgment issued by this Court dismissing the Krepps II Action for lack of personal jurisdiction and for failure to effect proper service of process. Judgment will be entered dismissing the action.

It is so ordered.