*622 OPINION OF THE COURT
Philip S. Straniere, J.
Currently, before the court is a request by plaintiff for inquest. Defendant was ordered to appear in the Civil Court of the City of New York, County of Richmond, on Thursday, May 25, 2006. Defendant did not appear. Plaintiff Masood H. Sayeedi, a resident of Staten Island, New York, commenced this action against defendant Timothy D. Walser, a resident of Houston, Missouri, for breach of contract resulting from the Internet sale of an automobile engine. Plaintiff purchased the engine via “eBay.” The plaintiff in support of his claim submitted an engine assessment from U.N. Auto Repair Inc. that states: “engine no good,” “connecting rod broke,” “damge crams shaft [sic],” “engine is no good,” and “need to replace engine.”
Plaintiff also submitted a partial printout (page 2 of 3) of the eBay auction page which describes the engine purchased by plaintiff and sold by defendant. This printout includes information and specifications regarding a “Chevy 350 hi-nickel (3970010) 350 HP” engine, apparently sold by defendant, although no documents make such a connection. According to this printout the engine sold was listed as being in “new” condition, “fresh from the shop” and “built by a pro.” Plaintiff provides bank statements, for an account in the name of “Sayeedi Services,” at First Equity Bank. He points specifically to two transactions, one a $1,150 payment to U.N. Auto. No description of what services were rendered is provided. Second, a $1,444.03 charge to PayPal user “JLWALSER.” Lastly, plaintiff provided notarized proof of service on defendant at his Houston, Missouri, address by the Texas County Sheriffs Office.
eBay is a popular Internet service that provides consumers with a way to buy and sell new or used goods in an auction style format over the Internet. In 1995 eBay was one of the first to pioneer what has now become a ubiquitous form of e-commerce. As facilitators and providers of eBay-type services continue to increase in popularity, courts are, not surprisingly, faced with the task of applying settled law to modern technological dilemmas. The case at bar is a case that requires such application.
A. Do eBay Users Surrender Their Rights to Bring Legal Actions against One Another Upon Agreeing to the Terms and Conditions of the “eBay User Agreement”?
eBay transactions take place only between registered users and both the buyer and the seller must have registered eBay ac *623 counts before any sale or purchase can occur. Before an individual can start an eBay account the user must agree to a standard “click through” or “click wrap” agreement setting out eBay’s requirements for membership entitled “eBay user agreement.”[1] Although this agreement contains a section entitled “Resolution of Disputes,” said section only governs disputes brought directly against eBay, itself, by users, and not disputes between users. Although dispute resolution options are provided, and albeit encouraged by eBay, the user agreement does not explicitly limit a user’s traditional common-law rights to seek redress for tortious activity. Therefore, an action in Civil Court is an available remedy.
B. Is a Nonresident Defendant Subject to New York Jurisdiction on the Basis of a Single On-Line Auction for Goods Placed on an International Web Site?
The New York City Civil Court Act confers, upon courts, jurisdictional power over nonresidents in three situations. The first is if the nonresident “transacts any business within the city of New York or contracts anywhere to supply goods or services in the city of New York”; the second is if the nonresident “commits a tortious act within the city of New York” (with the exception of defamation); and the third is if the nonresident “owns, uses or possesses any real property within the city of New York.” (CCA 404 [a] [1], [2], [3], respectively.)[2]
CCA 404’s far-reaching nature has limits. The requirements for personal jurisdiction set out in CCA’s long-arm statute require nothing less than the due process guarantees provided by the United States Constitution. The inquiry and requisite criteria for establishing personal jurisdiction over a nondomiciliary was set out in the seminal United States Supreme Court case International Shoe Co. v Washington (326 US 310, 316 [1945]) and its progeny. An assertion of jurisdiction meets the International Shoe Co. requirements only if the out-of-state de *624 fendant has “purposefully directed” his or her activities at residents of the forum, and if the plaintiffs claims “arise out of or relate to” those activities. (Burger King Corp. v Rudzewicz, 471 US 462, 472 [1985].) Isolated contacts may support jurisdiction only if a substantial connection with the forum state is created and such contacts must be more than “random, fortuitous, or attenuated” (id. at 475).
a. Does CCA 404’s “Supply Goods, or Services” Requirement Bypass a Minimum Contacts Analysis or Must One Still be Conducted?
CPLR 302 (a) (1) was amended in 1979 (the language was subsequently incorporated into CCA 404) to permit the assertion of long-arm jurisdiction where the plaintiffs cause of action arises from a contract “to supply goods or services in the state,” without regard to where the contract was made. It is clear that the exercise of jurisdiction is not proper under every set of facts that seemingly fit a straightforward reading under the statute. The stated purpose of CPLR 302 and CCA 404 was to embrace nonresidents who have engaged in purposeful activities in connection with the matter in suit and to extend as far as due process will allow. (Gasarch v Ormand Indus., Inc., 346 F Supp 550 [SD NY 1972].) To determine this limit, New York courts have adopted requirements that mirror the International Shoe Co. test. The New York personal jurisdiction inquiry requires an affirmative answer to the following questions: (1) is the quality of the New York contact of such a nature that a nonresident defendant can be deemed to have purposefully invoked the benefits and protections of New York law, and (2) does the claim in question arise out of that purposeful New York activity. (Hutton v Piepgras, 451 F Supp 205 [SD NY 1978].) As David Siegel notes in CCA 404 Practice Commentaries (at 132) “the case law on [long-arm jurisdiction] is immense and almost every case is just a sui generis inquiry into whether or not the acts performed by the defendant constituted the [necessary] contacts.” (Emphasis added.)
Accordingly, in order to assert jurisdiction under CCA 404 analysis, an inquiry into the twofold minimum contacts test described above must be made.
b. Did the Defendant Transact Any Business within the City of New York or “Contract Anywhere” to Supply Goods, or Services in New York, to a Degree Sufficient to Satisfy Constitutionally Mandated Minimum Contacts?
The defendant in this case created a username, posted an item for sale on eBay, and shipped the item to the highest bid *625 der. The New York Court of Appeals has held, on more than one occasion, that the “mere shipment” of goods into New York does not qualify as a sole basis for personal jurisdiction. In order for jurisdiction to attach, any such shipment had to be part of a larger transaction in which the defendant engaged in some relevant acts within the state. (See, e.g., McKee Elec. Co. v Rauland-Borg Corp., 20 NY2d 377 [1967]; Standard Wine & Liq. Co. v Bombay Spirits Co., 20 NY2d 13 [1967]; Kramer v Vogl, 17 NY2d 27 [1966].) This principle has endured even after the “contract anywhere to supply goods, or services in New York” language was incorporated into CCA 404. (See McGowan v Smith, 52 NY2d 268 [1981] .)[3] In McGowan the Court ruled that long-arm authority does not extend to a nondomiciliary who merely shipped goods into the state without ever crossing its borders, and further required some purposeful activities within the state in order to justify bringing a nondomiciliary defendant before New York state courts. (See also, Paradise Prods. Corp. v Allmark Equip. Co., 138 AD2d 470, 471 [2d Dept 1988] [where plaintiffs New York suit for breach of contract lacked jurisdiction because the defendant’s mere “(k)nowledge that a product may be destined for a particular forum” was deemed insufficient contact with the state].)
Similarly, in Messilia v Costa (NYLJ, Feb. 14, 2000, at 32, col 2) , this court had the occasion to consider whether a Florida defendant who entered into a contract to ship computer goods to the plaintiff in New York, who then repackaged the products for sale outside the country, satisfied CPLR 302’s “contract anywhere” clause. In Messilia defendant was a local computer supply retailer that had no other contacts with New York other than the shipment of computer goods to plaintiff, defendant had no other customers in New York and only, perhaps, one other account outside of Florida. Customers were able to place orders either by telephone, or facsimile transmission. Even though the defendant maintained a passive Web site, it functioned only as an informational conduit; all orders had to be placed via some conventional means of communication. This court considered the constitutional grounds for which CPLR 302 rests, namely: (1) the contract will have contemplated that the defendant’s promised action would have a New York “effect” so there is no *626 surprise or absence of purposeful activity by the defendant; and (2) the total failure to perform a contract to deliver goods or perform services in New York can have direct consequences in the state, no less so than if the contract were performed but inadequately. (Weinstein-Korn-Miller, NY Civ Prac ¶ 302.11a.) Since defendant’s actions had no “effect” in New York, given plaintiffs reselling of the products, the court determined that despite CPLR 302’s expansive language, constitutional limits nonetheless restricted the exercise of jurisdiction.
Although there appears to be no New York cases on whether jurisdiction is proper specifically as a result of a single on-line auction for the sale of a good that was shipped in state, the Appellate Term, First Department, in Jones v Munroe (2 Misc 3d 24 [2003]) upheld a dismissal for failure to meet the requirements of CCA 404 where a Florida resident defendant sold to plaintiff an automobile through eBay. Munroe, however, did not involve the shipment of goods to the plaintiffs residence in New York. The automobile was retrieved by the plaintiff from the defendant’s state of residence in Florida. The court ruled such contacts were insufficient to confer personal jurisdiction.
The situation, such as this case, where a single on-line auction is conducted through eBay (or some similar on-line auctioneer) and goods are actually shipped to the buyer’s state appears not to have been addressed by any other New York court. Although several non-New York courts have had the occasion to consider the issue, the majority of these courts have held that the usual on-line auction process does not rise to the level of purposeful conduct required to assert specific jurisdiction. (See United Cutlery Corp. v NFZ, Inc., 2003 WL 22851946, 2003 US Dist LEXIS 21664 [D Md 2003]; Machulsky v Hall, 210 F Supp 2d 531, 544-545 [D NJ 2002]; Winfield Collection, Ltd. v McCauley, 105 F Supp 2d 746, 749 [ED Mich 2000]; Boschetto v Housing, 2006 WL 1980383, 2006 US Dist LEXIS 50807 [ND Cal 2006].) The typical eBay sale is conducted as follows:
“A seller advertises an item on the eBay interface, using a template. The seller establishes a minimum initial bid and a deadline for the item’s auction to end. Buyers may then bid for the item through the eBay interface, which for each item posts the current bid and the time remaining. At the expiration of the auction period, the highest bidder wins the item. EBay puts the seller and winning buyer in contact by email to arrange payment and shipping.” *627 (Action Tapes, Inc. v Weaver, 2005 WL 3199706, *2 n 2, 2005 US Dist LEXIS 29312, *5 n 2 [ND Tex 2005].)
The courts finding no jurisdiction often have focused on the logistics germane to an on-line auction where the “choice of [the] highest bidder is . . . beyond the control of the seller” (Winfield Collection, Ltd., 105 F Supp 2d at 749), and similarly that the only intent manifested by the eBay seller is to “sell to the highest bidder, regardless of the state in which the bidder resided” (United Cutlery Corp., 2003 WL 22851946, *4, 2003 US Dist LEXIS 21664, *13). These courts have reasoned where the eBay seller has no authority over the audience to which the listing of their good(s) are disseminated (id.), such sales are merely “random” and “attenuated” contacts and do not raise to the level of “purposeful availment” required to meet due process.
The few courts that have found personal jurisdiction over purely on-line auction sales have focused primarily on the sophistication of the seller. (See, e.g., Dedvukaj v Maloney, 447 F Supp 2d 813 [ED Mich 2006] .)[4] Traditionally, courts have applied the “sliding scale” test in Internet jurisdiction cases, which seeks to distinguish interactive from passive Web sites (see Zippo Mfg. Co. v Zippo Dot Com, Inc., 952 F Supp 1119 [WD Pa 1997]). Under the Zippo sliding scale test, “proper exercise of personal jurisdiction in a claim involving Internet contact is directly proportional to the commercial interactivity of the website over which the contact is made” (Action Tapes, 2005 WL 3199706, *2, 2005 US Dist LEXIS 29312, *6-7 [citations omitted]). However, this mode of analysis makes little sense in the eBay context since eBay, and not the user, controls the interactivity and marketing efforts of the Web site. As noted in Action Tapes, the sellers and buyers who connect through eBay “cannot be said themselves to control eBay’s degree of commercial interac *628 tivity any more than a buyer and seller at Sotheby’s can be said to be responsible for the premises or to control the auctioneer” (2005 WL 3199706, *2, 2005 US Dist LEXIS 29312, *8). Accordingly, the “sliding scale” standard is not applicable in the current case. Courts such as Dedvukaj appear to be applying a modified Zippo analysis, aimed not at determining the interactivity or passivity of the eBay Internet site itself, but instead seeking to distinguish between the purposeful activity and the impressions created by the activity and representations of the individual eBay user[5] from the standard content, templates, and general structure provided to all eBay users. Regardless of whether such a sliding scale analysis is employed or not, the crucial question remains whether the quality of the New York contact was of such a nature that the defendant can be said to have purposefully invoked the benefits and protections of New York law (Hutton v Piepgras, 451 F Supp 205 [SD NY 1978]).
In the case at bar the contacts of the defendant, as presented by plaintiff, fail to meet the Hutton requirements. It has not been shown to this court’s satisfaction that the defendant purposefully invoked the benefits and protections of New York law. No evidence was provided by plaintiff as to defendant’s overall eBay statistics, experience, or of any marketing directed at potential customers, designed for instance, to welcome bids from New Yorkers or any other acts that indicate defendant may be purposely availing himself specifically to the business of New Yorkers or any desire to take advantage of New York law. The defendant was prepared to sell his Chevrolet engine to whoever the highest bidder happened to be regardless of the state in which they happened to reside. Given this unique sale style, even though a contract may be formed, the location of delivery is not likely in the seller’s realm of contemplation. In the typical on-line auction sale the ultimate destination of any item is completely determined by the potential buyers through the bidding process. Accordingly, to summon the defendant into a New York court on this matter would contravene the traditional notions of “fair play” and “substantial justice” that have become the touchstone of personal jurisdiction.
*629 C. Assuming Arguendo the Court has Jurisdiction Over Defendant, Has the Plaintiff Proved His Prima Facie Case for Breach of Contract or UCC Breach of Warranties?
The elements of a common-law cause of action for breach of contract are: (1) formulation of a contract between plaintiff and defendant, (2) performance by plaintiff, (3) defendant’s failure to perform, and (4) resulting damage (Furia v Furia, 116 AD2d 694 [1986]). There is little question as to whether a contract was formed. The mutual assent of the two parties is evidenced through the eBay bidding process, payment and the ultimate shipment of goods. In the eBay terms and conditions members agree to abide by eBay policies which state clearly “when a seller lists an item on eBay, and the buyer bids for and wins that item, the seller and buyer have entered into a contract. Both members are expected to honor that contract.”[6] The ultimate shipment of goods by defendant leads the court to believe payment was made as agreed. Where the plaintiffs case fails is in proving that defendant’s performance was deficient. Since delivery of the engine was clearly performed, plaintiff must ultimately be seeking damages for a claim that the quality of the goods was deficient (i.e., that the goods were warranted and such warranties were breached). There is no evidence in admissible form that the engine was defective. Merely attaching a statement from a repair shop is insufficient to establish breach of contract.
Breach of warranties on purchased goods are governed by the Uniform Commercial Code. Since no evidence was presented that defendant is a “merchant” and not a casual seller for purposes of UCC 2-314, there can be no breach of any implied warranties. This leaves only the question of whether or not some express warranty was breached.
In order to succeed on a breach of express warranty claim under UCC 2-313, an express affirmation as to the quality of the goods needs to be shown. Such warranties are created by either (1) an affirmation or promise that the goods will conform to such warranty, (2) a description that is made part of the basis of the bargain, or (3) a showing of a sample or model that is made part of the basis of the bargain. No communication between buyer and seller has been produced by plaintiff, nor has any evidence been produced that a sample or model was shown to him prior to his purchase so as to meet this criteria. The *630 plaintiff must, therefore, contend that the description and photograph contained in the listing itself constituted an express warranty.
The same evidentiary deficiencies that plague plaintiff’s common-law breach of contract claim similarly bar a successful UCC express warranty claim. The two claims will be addressed together.
“[A]n affirmation merely of the value of the goods or a statement purporting to be merely the seller’s opinion or commendation of the goods does not create a warranty” (UCC 2-313 [2]). Plaintiff alleges no affirmation that the engine had been tested, was guaranteed to work in general or would work with any particular model car.[7] Moreover, no documentation was provided by plaintiff as to whether the engine was tested immediately upon delivery from defendant or if said engine was installed first in plaintiffs Chevrolet and then tested at a later date (and if first installed, then by whom). Further, aside from the mention of a broken connecting rod, there is nothing that details what exactly is wrong with the engine. All that is provided is a mere conclusory statement from an automobile repair shop indicating “engine no good [szc].” A $1,150 fee is cited from U.N. Auto Body but the services provided on the vehicle are nowhere listed. Moreover, before one can operate any motor vehicle repair shop in the State of New York, under Vehicle and Traffic Law § 398-d, it must be licensed. No license number is provided by plaintiff for “U.N. Auto Repair Inc.” nor is one displayed on their own damage assessment slip.
Further, plaintiff failed to provide the entire contractual instrument; the full eBay auction pages constitute the contract with which both parties agreed. Plaintiff did not provide a full printout, only page 2 of 3 was submitted as evidence to the court. A typical eBay auction page displays information about the item up for bid, the status and progress of the auction, other bids made on the good(s), the seller’s eBay username, the seller’s feedback rating on eBay, and the seller’s shipping terms. Noticeably absent from plaintiffs printout is the standard area *631 provided by eBay where sellers are required to post information regarding their return policy and often where sellers will further explain or disclaim warranties (cf T.T. Exclusive Cars, Inc. v Christie’s Inc., 1996 WL 737204, *1, 1996 US Dist LEXIS 19055, *2 [SD NY 1996] [where a catalogue advertisement indicating that automobile was in “perfect,” “like new” condition was disclaimed within the same catalog, and the court held that the buyer accepted the terms of such disclaimer when it placed a bid on the car]). Without the full agreement, all of the terms are not known to the court. This court will not selectively enforce incompletely provided contractual agreements. In addition, the court notes plaintiff seeks $2,000 in damages, yet the documentation provided indicates only $1,444.03 was actually paid for the engine; nowhere is this discrepancy explained by plaintiff.
Finally, plaintiff has not established who are the proper parties. Masood H. Sayeedi is the named plaintiff, yet payment to defendant was from an entity called “Sayeedi Services.” The named defendant is Timothy D. Walser of Houston, Missouri, yet payment was made to a PayPal account with the username “JLWALSER” of California; there is no explanation of these discrepancies.
In view of the facts both that the court has no jurisdiction to decide this matter and that plaintiff has not proved his prima facie case, the court recommends that plaintiff utilize one of the many on-line dispute resolution options provided by eBay to its members to resolve this matter.[8] Alternatively, plaintiff should investigate his options under “PayPal Buyer Protection” which provides coverage on items purchased on eBay where payments, as here, are made via eBay’s PayPal electronic payment service.[9]
*632 Plaintiffs cause of action is dismissed. The court lacks the personal jurisdiction required to reach the merits of this case. A single transaction conducted on line via eBay between members where one member is a resident of a state other than New York, without more, does not constitute sufficient purposeful availment to satisfy the minimum contacts necessary to justify summoning across state lines, to a New York court, the seller of an allegedly nonconforming good. Assuming arguendo jurisdiction, plaintiff failed to carry his evidentiary burden in proving the elements necessary under both common-law breach of contract and UCC 2-313 breach of an express warranty. The inquest is denied.

. ebay User Agreement, available at <http://pages.ebay.com/help/policies/ user-agreement.html> (accessed Feb. 26, 2007).

. CCA 404 is New York City’s long-arm statute, modeled after New York State’s long-arm statute, CPLR 302. The reach of CCA 404 is much less than its CPLR counterpart in tort cases because CPLR 302 grants personal jurisdiction in cases where a tortious act is committed outside the state but causes injury inside the state, whereas CCA 404 does not. (See David D. Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, CCA 404 [discussion of the statute’s differences and similarities to CPLR 302].) Since the purpose and legal affect of the two statutes are the same, this analysis treats all jurisdictional tests held to apply under CPLR 302 as equally relevant under a CCA 404 inquiry.

. As this court noted in Messilia v Costa (NYLJ, Feb. 14, 2000, at 32, col 3) , this “language was added in 1979 in order to abrogate the ‘mere shipment’ rule established by prior case law and was proposed to extend to New York’s long-arm jurisdiction to its constitutional limits.” (Citations omitted.)

. In Dedvukaj, the defendant, who conducted his eBay business under the username “MrLister,” was listed as an eBay “Power Seller,” displayed favorable marketing statistics, required a warehouse for the storage of goods, offered a toll-free number to customers and appeared to have several employees, and encouraged viewers to “[v]isit this seller’s eBay Store!” and provided a link to MrLister’s “eBay store.” (Dedvukaj, 447 F Supp 2d 813, 816 [2006].) Defendant also placed extensive logos, slogans, and marketing materials on the auction screens in such a way that may cause a novice buyer to be confused as to “where eBay stops and MrLister begins” (id. at 823). Analogously, in Malcolm v Esposito (63 Va Cir 440, 446 [Va Cir Ct 2003]), a dispute arose from a single eBay sale to a Virginia resident. The court found jurisdiction proper because defendants were commercial sellers with 213 sales on eBay and who represented that they had local, national and international eBay customers (id.).

. For example in Action Tapes (2005 WL 3199706, *2, 2005 US Dist LEXIS 29312, *6), the court found particularly important the fact that eBay sales of defendant’s embroidery patterns totaled about $7,000; however, only 1.5% of her total sales ($104), since she began selling patterns, were generated from sales to a Texas address.

. eBay Seller Non-Performance, available at <http://pages.ebay.com/help/ pohcies/seller-non-performance.html> (accessed Feb. 26, 2007).

. There is nevertheless a strong implication that the engine would, in fact, work upon delivery. According to plaintiff the engine condition was listed as “new.” eBay’s listing guidelines confirm this: “[i]n general, an item can be listed as ‘new’ if it’s unused and fully functional, has no damages or signs of usage.” (<http://pages.ebay.eom/help/attrhelp/contextual/l.html> [accessed Feb. 26, 2007].) However since the full contract was not provided to the court, the full extent to which warranties were made or disclaimed is unknown.

. Including: eBay’s Standard Purchase Protection Program, available at <http://pages.ebay.com/help/tp/esppp-process.html> (accessed Feb. 26, 2007); file a case with eBay’s on-line mediation service “SquareTrade,” available at <http://www.squaretrade.com/spl/jsp/eby/ebMotors_nf.jsp> (accessed Feb. 26, 2007); or initiation of a dispute/claim directly with eBay for items not received or significantly not as described, available at <http://pages.ebay.in/help/tp/inrsnad-process.html#stepl> (accessed Feb. 26, 2007).

. PayPal buyer protection information, available at <https:// www.paypal.com/cgi-bin/webscr?emd=_pbp-info-outside#buyer> (accessed Feb. 26, 2007).