NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  05a0095n.06
Filed:  February 8, 2005

No. 04-3145

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| THE CADLE COMPANY, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant*, | ) | UNITED STATES DISTRICT |
| | ) | C O U R T   F O R   T H E |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| JAN R. SCHLICHTMANN; JAN R. | ) | |
| SCHLICHTMANN, Attorney at Law, PC | ) | O P I N I O N |
| | ) | |
| *Defendants-Appellees*. | ) | |

BEFORE:    COLE, and CLAY, Circuit Judges; HOOD, District Judge.*

**R. GUY COLE, JR., Circuit Judge.**  This is an appeal from the district court's dismissal of Plaintiff Cadle Company's case against Jan Schlichtmann for lack of personal jurisdiction.  Cadle sued Schlichtmann for defamation and violation of the Ohio Deceptive Trade Practices Act.  For the following reasons, we **AFFIRM** the judgment of the district court.

### I.  BACKGROUND

The Plaintiff-Appellant, Cadle Company ("Cadle"), is an Ohio-based debt collector.  For the past ten years Cadle and the Defendant-Appellee, Jan Schlichtmann, have been entangled in legal battles.  In 1995, Cadle sued Schlichtmann to enforce a security interest it claimed to have on the

---

* The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

attorney fees Schlichtmann earned in a former case. Schlichtmann defended himself against this suit, and established a website, "www.truthaboutcadle.com," to inform others of what he believed were the unlawful activities of Cadle in Massachusetts, where Schlichtmann resides. Schlichtmann also took initial steps toward starting a class action suit against Cadle, joining with other victims of what he believed were Cadle's unlawful business practices. Schlichtmann informed Massachusetts state regulators about Cadle's practices, and the State's Banking Commissioner issued a "Cease and Desist Order," mandating that Cadle stop unlicensed and unauthorized collection activity in Massachusetts.

In response to Schlichtmann's efforts, Cadle initiated another lawsuit against Schlichtmann, alleging state law claims of defamation and violation of the Ohio Deceptive Trade Practices Act. Schlichtmann moved to dismiss the case for lack of personal jurisdiction, among other things. Cadle argued that the court had jurisdiction over Schlichtmann based on his website, statements he made to the Business Journal Online, a demand letter he sent to Cadle in Ohio, and statements he allegedly made to a local television station in Youngstown, Ohio. The district court granted Schlichtmann's motion and dismissed the case. This timely appeal followed.

## II. ANALYSIS

### A. Standard of Review

We review a district court's dismissal for lack of personal jurisdiction *de novo*. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). If the district court, as was the case below,

did not conduct an evidentiary hearing, this Court must review the pleadings and affidavits in the light most favorable to the nonmovant. *Id.*

## B. Dismissal for Lack of Personal Jurisdiction

The plaintiff has the burden of establishing a prima facie showing of personal jurisdiction over the defendant. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Personal jurisdiction exists in two forms: "general" or "specific." *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002). General jurisdiction exists over a defendant when his "contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Id.* (citing *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)).

Specific jurisdiction exists if the defendant's contacts with the forum state are related to the case at hand. In *Southern Machine Co. v. Mohasco Industries, Inc.*, this Court established a three-part test for determining whether specific jurisdiction exists, which incorporates due process concerns of the defendant:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co*, 401 F.2d 374, 381 (6th Cir. 1968).

When attempting to obtain jurisdiction over a person not physically present within the state at the time of service in a diversity case, a district court applies the state's long-arm statute.

*Calphalon Corp.*, 228 F.3d at 721.  Ohio's long-arm statute is Ohio Rev. Code § 2307.382.  The long-arm statute lists the type of conduct by the defendant which may be sufficient for personal jurisdiction when it gives rise to a cause of action.  Ohio's long-arm statute includes:  "Transacting any business in this state"; "Causing tortious injury by an act or omission in this state"; and "Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state."  OHIO REV. CODE §  2307.382(A)(1), (3), and (6).  This Court has acknowledged that Ohio's long-arm statute does not reach to the full limits of the federal constitution.  *Bird*, 289 F.3d at 871.

*1.  The Truthaboutcadle.com Website*

When the defendant's alleged contact with the forum state occurs via the internet, the plaintiff faces an initial hurdle in showing *where* this internet conduct took place for jurisdictional purposes.  We have held that the operation of "a website that is accessible to anyone over the Internet is insufficient to justify general jurisdiction," even where the website enables the defendant to do business with residents of the forum state, because such activity does not "approximate[] physical presence within the state's borders."  *Bird*, 289 F.3d at 874.

However, the operation of a website may justify specific jurisdiction, if it satisfies the three factors set forth in *Southern Machine*, namely, if the operation of the website constitutes purposeful availment, is the basis of the cause of action against the defendant, and jurisdiction over the defendant is reasonable.  There is strand of law which holds that whether a court can assert specific

- 4 -

personal jurisdiction over a website owner depends on how interactive the website is with the people in the forum state. There is another relevant strand of law dealing with whether the court can assert personal jurisdiction over defamatory publications which reach into the forum state. Both bodies of law will be discussed below, although the latter is most relevant here.

The "operation of an Internet website can constitute the purposeful availment of the privilege of acting in a forum state . . . if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Bird*, 289 F.3d at 874 (internal quotations omitted). In evaluating whether the defendant's contact with the forum state constituted purposeful availment, this and other circuits have used the "*Zippo* sliding scale" approach, which distinguishes between interactive websites, where the defendant establishes repeated online contacts with residents of the forum state, and websites that are passive, where the defendant merely posts information on the site. *See, e.g.*, *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)); *Revell v. Lidov*, 317 F.3d 467, 472 (5th Cir. 2002). Interactive websites can subject the defendant to specific personal jurisdiction, whereas passive websites are less likely to confer such jurisdiction. *Neogen Corp.*, 282 F.3d at 889-91.

An examination of the truthaboutcadle.com website is helpful here. Schlichtmann created the site to inform people of Cadle's allegedly illegal activities in Massachusetts. The site details the actions taken by Massachusetts officials against Cadle, including actions by the Attorney General and the Banking Division. The site states that "The Sole purpose and intent of [Cadle's] enterprise

is to defraud consumers and businesses, deceive state and federal courts, and avoid state laws and regulations meant to protect against predatory practices." The website contains Schlichtmann's contact information if "you want to learn more about this growing effort" to stop Cadle's illegal practices in Massachusetts. Cadle also claims that Schlichtmann's website contains a link to an interactive page entitled 'Class Action Complaint Form' which solicits people to join Schlichtmann in his crusade against Cadle. However, there is no evidence in the record that Schlichtmann's website links to this Class Action Complaint Form, nor does the form make any mention of Schlichtmann, Cadle, or Ohio, and Cadle has not alleged that any Ohio resident used the form.

As the district court noted, Schlichtmann's website probably falls between being interactive and passive, particularly because the website provides contact information, and arguably solicits support for the campaign against Cadle's activities. If the website is "semi-interactive," "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs." *Zippo*, 952 F. Supp. at 1124. Because Cadle has not alleged that any interaction or exchange of information occurred between Schlichtmann and Ohio residents via the website, personal jurisdiction over Schlichtmann does not exist based on the nature of the website.

While the operation of the website alone is insufficient to confer jurisdiction over Schlichtmann, Cadle also argues that Schlichtmann's statements on the website may be sufficient. In determining whether the defendant's publication or dissemination of information can give rise to specific jurisdiction, we must look to *Calder v. Jones*, 465 U.S. 783 (1984). *Calder* sets up the

"effects test" for specific jurisdiction.  In *Calder*, an actress sued two Florida-based National

Enquirer writers in a California court for their unflattering article about her, which was available in

California as well as other states.  *Id*. at 784.  The Supreme Court found that California had personal

jurisdiction over the writers because "California is the focal point both of the story and of the harm

suffered."  *Id*. at 789.  The Court noted that the story concerned the actress's activities in California.

*Id*. at 788.  Additionally, regarding the "harm suffered," the Court stated that the writers'

"intentional, and allegedly tortious, actions were expressly aimed at California," noting that "they

knew that the brunt of that injury would be felt by respondent in the State in which she lives and

works and in which the National Enquirer has its largest circulation."  *Id*. at 789-90.  Therefore, the

Court found that the defendants could "reasonably anticipate being haled into court" in California.

*Id*. at 790.

Under the *Calder* regime, this Court in *Reynolds v. International Amateur Athlete*

*Federation*, determined that there was no personal jurisdiction over an international sports

organization where it published a press release about the plaintiff, an athlete residing in Ohio, and

his failure of a drug test.  *Reynolds*, 23 F.3d 1110 (6th Cir. 1994).  In an often-cited portion of this

opinion, we distinguished Reynolds's case from *Calder* for the following reasons:

> First, the press release concerned Reynolds' activities in Monaco, not Ohio.  Second, the source of the controversial report was the drug sample taken in Monaco and the laboratory testing in France.  Third, Reynolds is an international athlete whose professional reputation is not centered in Ohio.  Fourth, the defendant itself did not publish or circulate the report in Ohio; Ohio periodicals disseminated the report. Fifth, Ohio was not the "focal point" of the press release.  The fact that the IAAF could foresee that the report would be circulated and have an effect in Ohio is not, in itself, enough to create personal jurisdiction.  Finally, although Reynolds lost Ohio

> corporate endorsement contracts and appearance fees in Ohio, there is no evidence
> that the IAAF knew of the contracts or of their Ohio origin.

*Id*. at 1120.

Against this legal backdrop, Schlichtmann's website does not demonstrate purposeful availment in Ohio. The website specifically refers to Cadle's activities in Massachusetts. For example, the site explains that "On March 31, 2003 a group of Massachusetts consumers filed a demand letter with the company formally requesting The Cadle Company return all monies it fraudulently secured as a result of its actions over the last 13 years or face a lawsuit." Neither the site, nor any of its listed articles directly discuss Cadle's activities in Ohio.

Just as in *Reynolds*, while the "content" of the publication was about an Ohio resident, it did not concern that resident's Ohio activities. Furthermore, nothing on the website specifically targets or is even directed at Ohio readers, as opposed to the residents of other states. Appellant argues that if Schlichtmann's goal was only to reach Massachusetts readers, then he should have used only local media, not the internet. The law does not require that people avoid using the internet altogether in order to avoid availing themselves of the laws of every state. *See Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002) (finding that Columbia University's maintenance of a website and internet message board, on which one of its professors posted an article that criticized the Texas plaintiff, was insufficient to confer personal jurisdiction in Texas over the university or the professor, because the "article written by Lidov about Revell contains no reference to Texas, nor does it refer to the Texas activities of Revell, and it was not directed at Texas readers as distinguished from readers in other states"). Additionally, although Appellant claims that Schlichtmann's website links to a class action

form and thereby solicits litigants, there is nothing in this form that targets Ohio, let alone mentions

Cadle, and there is no allegation that Schlichtmann used this form to make repeated online contacts

with Ohio residents. Consequently, because the website was not directed toward Ohio in its content

or in its target audience, the case is closer to *Revell* and *Reynolds* than *Calder*.

The above analysis applies equally to Cadle's claim that personal jurisdiction arises over

Schlichtmann based on his interview with the Business Journal Online. Just as with the website, the

article only discusses Cadle's Massachusetts activities and it is not directed at Ohio readers. Thus,

Schlichtmann did not purposefully avail himself in Ohio via the website or the Business Journal

Online.

*2. The News Program on TV-27 in Youngstown, Ohio*

Cadle also argues that the district court had personal jurisdiction over Schlichtmann based

on statements Schlichtmann provided to TV-27, a local station in Youngstown, Ohio.[1] The news

program included statements made both by Schlichtmann and Dan Cadle, the president of Cadle.

In the program, the reporters discussed Schlichtmann's efforts against Cadle in Massachusetts. The

reporter mentioned that the Massachusetts Secretary of State was looking into Cadle's deceptive and

predatory practices. Then the station played footage of Schlichtmann stating that, "There's no pity,

there's no humanity, there's no nothing, there's just, you know, destroying people's lives in order

to squeeze money." Dan Cadle then said that Schlichtmann was "nothing but a scumbag."

---

[1] It is not entirely clear from the transcript that this interview is "live." It is possible, given the transcript, that the Youngstown TV station simply took excerpts from Schlichtmann's statements made to it beforehand, or from statements that he never gave to that station. In such a case, the statements would be more like the statements on the website and to the online journal.

Schlichtmann then stated, "They [Cadle] have tens of millions of dollars in properties, maybe in the hundreds of millions . . . We intend to stop the Cadle Company's predatory practices. . . . We're either gonna civilize them, or we'll civilize them out of existence."

We may affirm the district court's judgment to dismiss this case on any ground that finds support in the record. *Jaffke v. Dunham*, 352 U.S. 280, 281 (1957); *J.E. Riley Inv. Co. v. Comm'r of Internal Revenue*, 311 U.S. 55, 59 (1940). Here, even if specific jurisdiction existed over Schlichtmann based on the in-state contact,[2] this contact does not provide for a colorable claim. Here, none of Schlichtmann's statements played on the Ohio television station amount to actionable defamation. In order to prevail on a defamation claim, Cadle must demonstrate that (1) a false and defamatory statement was made about it; (2) there was an unprivileged publication to a third party; (3) there was fault amounting at least to negligence on the part of the publisher; and (4) the statement is actionable irrespective of special harm or the existence of special harm caused by the publication. *Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Serv., Inc.*, 611 N.E.2d 955 (Ohio App. Ct. 1992). While Schlichtmann's statements conveyed that he does not like Cadle, they did not convey any factual allegations. Moreover, Schlichtmann's statements were in relation to the Massachusetts investigation of Cadle, and statements about government affairs are privileged under

---

[2] The Supreme Court has expressly declined to reach the question of:

(1) whether the terms "arising out of" and "related to" describe different connections between a cause of action and a defendant's contacts with a forum, and (2) what sort of tie between a cause of action and a defendant's contact with a forum is necessary to a determination that either connection exists.

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).

Ohio common law as "record privilege." *Painter v. E.W. Scripps Co.*, 148 N.E. 2d 503, 505-508

(Ohio App. Ct. 1957). Thus, Schlichtmann's contact with Ohio through this news program does not

support an actionable claim by Cadle, and therefore the district court properly dismissed the case.[3]

*3. The Demand Letter*

Appellant alternatively claims that Schlichtmann subjected himself to jurisdiction in Ohio

when he, as counsel to four Massachusetts residents, mailed Cadle a demand letter in Ohio, outlining

various potential claims his clients have against the company and threatening the company with

litigation. We have held that a single letter by an attorney, concerning potential litigation cannot

confer specific jurisdiction over the attorney in the addressee's state when the letter merely relates

to the cause of action. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000).

Furthermore, under Ohio law, parties have absolute immunity from defamation suits arising out of

statements made during the course of litigation. *Erie County Farmers' Ins. Co. v. Crecelius*, 171

N.E. 97, 97-98 (1930). Here, Schlichtmann's letter was made in the course of representing clients

at the outset of litigation. Thus, Schlichtmann's contact with Ohio through this letter does not

support specific jurisdiction, nor does it support an actionable claim by Cadle.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment in dismissing this

action.

---

[3] This argument was fully briefed by both parties to the court below, although the district court did not rely on this reasoning in its written decision.