**Joseph DEDVUKAJ, Plaintiff,**

v.

**Timothy (Tim) MALONEY, Mr. Markdown, LLC, d/b/a Mr. Lister, d/b/a MrLister, and d/b/a Mr. Markdown, Jointly and severally, Defendants.**

No. 05–CV–72308.

United States District Court, E.D. Michigan, Southern Division.

Aug. 31, 2006.

Joseph Dedvukaj, Southfield, MI, Pro se.

Robert B. June, Ypsilanti, MI, for Defendants.

*MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' RENEWED MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR IN THE ALTERNATIVE FOR CHANGE OF VENUE*

ROSEN, District Judge.

## I. INTRODUCTION

Plaintiff Joseph Dedvukaj ("Dedvukaj") filed this action in United States District Court on June 10, 2005. On June 27, 2005, the Court issued a Show Cause Order to Plaintiff Dedvukaj regarding his diversity of citizenship allegations. Plaintiff responded to the Order to Show Cause on July 8, 2005 but failed in his response to cure the deficiency noted in his jurisdictional allegations. Meanwhile, before the Court decided the subject matter jurisdiction issue, on July 11, 2005, Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction, or in the alternative for Change of Venue. On July 25, 2005, the Court dismissed Plaintiff's case, without prejudice, for failure to adequately allege the citizenship of Defendant Mr. Markdown, L.L.C. for purposes of establishing federal subject matter jurisdiction. In the July 25 Order, the Court did not address Defendants' Motion to Dismiss. On July 27, 2005, Plaintiff filed a Motion for Reconsideration of the Order of Dismissal and properly addressed the diversity of citizenship. Accordingly, the Court vacated the Order of Dismissal and reinstated the case to the Court's active docket.

On October 20, 2005, Defendants renewed their Motion to Dismiss for Lack of Personal Jurisdiction, or in the alternative for Change of Venue. Plaintiff Dedvukaj

filed a Response to the Motion to Dismiss to which Response Defendants subsequently replied. Plaintiff thereafter submitted a Supplemental Brief in further support of his opposition to Defendants' Motion.

Defendants request dismissal under Fed. R. Civ. Pro. 12(b)(2) for lack of personal jurisdiction. Alternatively, Defendants request a change of venue to the United States District Court for the Northern District of New York pursuant to Fed.R.Civ.P. 12(b)(3) and 28 U.S.C. § 1391(a). Having reviewed and considered Defendants' Motion, Plaintiff's Response, and the Court's entire file of this matter, the Court has concluded that oral argument on this matter is not necessary. Therefore, pursuant to Local Court Rule 7.1(e)(2), Defendants' Motion will be decided on the briefs. This Memorandum Opinion and Order sets forth the Court's ruling.

## II. *FACTS*

Defendant Timothy Maloney ("Maloney") is a resident of Syracuse, New York, and is the sole member of Mr. Markdown, L.L.C. ("Mr.Markdown"). (Defs.' Mot. to Dis., p. 3.) Defendants operate a warehouse at 2760 Erie Blvd East, Syracuse, New York 13224. (Defs.' Mot. to Dis., p. 4.) Defendants sell items through internet auctions on the website www.eBay.com ("eBay"). Defendants use the Syracuse warehouse as part of the online business and list the warehouse address as the location of their store.

Plaintiff provided printed copies of the computer screen displays from the two auctions in question. (Pl.'s Compl. Ex. A & B; also Pl.'s Resp. Ex A & B.) Defendants have not objected to the screen printouts, and the Court will construe the printouts as an accurate depiction of the auction screens. The auction screen displays information about the item up for bid, the status and progress of the auction, other bidders, the seller, the seller's rating on eBay, and the seller's shipping terms. *Id.* Under the heading "Seller Information," these screen printouts identify the seller as "mrlister" and display a "Feedback Score" with a score and a star next to it, showing "Positive Feedback" of 98.5%, and indicating that "mrlister" has been a "Member since Sep–10–00 in United States." *Id.* In addition, "mrlister" is identified as an eBay "Power Seller." *Id.* This information appears to come from eBay, and is separate from some of the marketing and promotional material Defendants have included on the auction screens. The "Seller Information" includes a promotion to "Visit this seller's eBay Store!" and provides a link to an "eBay store" identified as "MrLister." *Id.*

Under the general information provided for the auctions, the "Item location" is listed as "Upstate N.Y. United States," and the "Ships to" information lists "United States, Canada, Europe, Asia, Australia." (Pl.'s Compl. Ex. A & B.) A link is provided for a potential buyer to estimate shipping costs, but the seller must confirm the actual shipping cost. *Id.*

A separate heading for "MrLister" provides another link to the "eBay store" for "MrLister" and provides headings and links for "Antiques & Collectibles," "Jewelry & Watches," "Clothing Other & SPECIALS," "Computers & Electronics," and "Other." (Pl.'s Compl. Ex. A & B.) Just below this listing, the site prominently displays a "Mr. Lister" logo that includes the phrase "Turn your Clutter into Cash!" and also displays the statement "100% Satisfaction Guaranteed." *Id.* The screen printouts also include multiple photographs of the paintings, the seller's detailed description of the item, and the seller's terms and conditions. *Id.* The "Auction Terms & Shipping Policy" in-

cludes instructions for international bidders to provide money orders using United States funds and to email for shipping quotes. *Id.* The listing provides the address for "Mr. Lister" in Syracuse, New York. *Id.* Defendants also provided a toll free number (1–877–4–lister) for use in conjunction with the auctions. (Pl.'s Resp. Ex. 1, p. 2.)

Plaintiff Dedvukaj is a resident of Michigan, and successfully bid for paintings in two auctions that Defendants conducted through eBay.[1] These two auctions involved the paintings "Suzanne" and "In the Lounge" by artist Itzchak Tarkay.[2] Plaintiff alleges that he believed he was bidding on the original artwork. Screen printouts of the online auctions show the paintings listed as "original" in multiple locations: three references to "Suzanne" as "original," four references to "In The Lounge" as "original"; close-up photographs of what appears to be the artist's signature; a plaque identifying an art gallery in Pennsylvania; and what appears to be an identification tag. (Pl.'s Compl. Ex. A & B.) Plaintiff Dedvukaj also submitted an Affidavit where he states that he called the toll free number provided on the auction (1–877–4–lister), spoke to Defendant Maloney, and verified the authenticity of both paintings as originals. (Pl.'s Resp. Ex. 1, p. 1–2.)[3]

The auctions in question took place over several weeks, and during the auctions, Plaintiff regularly received updates via email regarding the bids entered. (Pl.'s Resp. Ex. 1, p. 1–4.) Plaintiff regularly logged onto the website to monitor the progress of the auctions, regularly participated in the auction by raising his bid, and spoke with Defendants via the toll-free number during the auctions. *Id.*

Plaintiff emerged as the successful bidder in both the "Suzanne" auction and the "In The Lounge" auction. After winning both auctions, Plaintiff Dedvukaj communicated with Defendants through emails and phone calls, verified payment terms, and sent a check for $649.20 to Defendants at the listed address in Syracuse, New York. (Pl.'s Resp. Ex. 1, p. 4–5.) Defendants accepted this payment and cashed Plaintiff's check. *Id.*

Defendants never shipped the paintings, but offered Plaintiff a full refund. Plaintiff refused this refund and demanded the paintings or the fair market value of the originals. Plaintiff filed this action on June 10, 2005 alleging Breach of Contract, Fraud and Misrepresentation.

### III. *DISCUSSION*

Defendants' Motion to Dismiss requests this Court to dismiss Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction, or in the alternative, to transfer venue to the United States District Court for the Northern District of New York pursuant to Fed.R.Civ.P. 12(b)(3) and 28 U.S.C. § 1391(a). For the reasons explained below, the Court will deny the Defendants' Motion in its entirety.

### A. Burden of Proof

Although this matter is before the court on Defendants' motion to dismiss, Plaintiff has the burden of establishing the district court's jurisdiction. *Neogen Corp. v. Neo*

---

1. The exact dates of the auctions are not provided by either party, but the screen printouts indicate that the auctions both occurred in January 2005.

2. Defendant's auction listed "Suzanne" as "Suzanne Tarkay Woman in Coffee House" and "In the Lounge" as "Tarkay 4 Women in Coffee House." (Pl.'s Resp. Ex. A & B.)

3. Defendants Dispute the phone calls from Plaintiff, but have not submitted any affidavits. (Defs' Reply Br. p. 2.)

*Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir.2002). Where the court does not conduct an evidentiary hearing on the issue of personal jurisdiction in considering a Rule 12(b)(2) motion, the plaintiff "need only make a prima facie showing of jurisdiction." *Id.,* quoting *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir. 1996). In ruling on a 12(b)(2) motion, the "court will not consider facts proffered by the defendant that conflict with those offered by the plaintiff," *Neogen,* 282 F.3d at 887, and must construe the facts presented in the pleadings and affidavits in the light most favorable to the non-moving party. *See Serras v. First Tenn. Bank National Association,* 875 F.2d 1212, 1214 (6th Cir. 1989). *See also, Calphalon Corp. v. Rowlette,* 228 F.3d 718, 721 (6th Cir.2000).

## B. Personal Jurisdiction

In a diversity of citizenship case, this Court's exercise of personal jurisdiction must be both (1) authorized by Michigan law and (2) in accordance with the Due Process Clause of the Fourteenth Amendment. *Neogen,* 282 F.3d at 888.

### 1. Michigan's "long-arm" statute

Michigan's "long-arm" statute extends "limited" jurisdiction over individuals pursuant to M.C.L. § 600.705:

> The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise *limited personal jurisdiction* over the individual and to enable the court to render personal judgments against the individual or his representative *arising out of* an act which creates any of the following relationships:
>
> (1) The transaction of any business within the state.
>
> (2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

[ . . . ]

> (5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.

M.C.L. § 600.705 (emphasis added). Identical language allows Michigan's "long-arm" statute to extend "limited" personal jurisdiction over unincorporated voluntary associations pursuant to M.C.L. § 600.735. Limited jurisdiction extends only to claims arising from the Defendants' activities within Michigan or those which had an in-state effect. *Neogen,* 282 F.3d at 888.

■ The "transaction of any business" required for limited personal jurisdiction is satisfied by "the slightest act of business in Michigan." *Lanier v. American Board of Endodontics,* 843 F.2d 901 (6th Cir. 1988) (citing *Sifers v. Horen,* 385 Mich. 195, 199 n. 2, 188 N.W.2d 623 (1971)). In *Lanier,* the Sixth Circuit determined that the Illinois-based American Board of Endodontics' exchange of correspondence and telephone calls with a dentist in Michigan, including its collection of application fee as part of agreement to consider her credentials for Board certification for practice in Michigan, constituted transaction of some business in Michigan within meaning of Michigan long-arm statute. 843 F.2d at 906–908. In *Neogen,* the defendant, a Pennsylvania corporation, transacted business in Michigan by accepting blood samples for testing from Michigan, mailing the results to Michigan, making the results available to Michigan residents on a website, and accepting payment through the mail from Michigan. *Neogen,* 282 F.3d at 888.

■ In the present case, Defendants transacted business in Michigan when Defendants communicated with Plaintiff Dedvukaj in Michigan through email messages and telephone calls, accepted Plaintiff's bids during the auctions, accepted Plaintiff's winning bids in two auctions, sent

notice and confirmation to Plaintiff that he had submitted the winning bids in two auctions, confirmed shipping charges for two items to Michigan, and accepted payment through the mail from Michigan.

■ The "arising out of" requirement is satisfied in the present case because the alleged harm stems directly from the breach of the contracts that establish the transaction of business in Michigan. Defendants transacted business in Michigan, and Plaintiff's claims arise from those transactions.

In addition to M.C.L. § 600.705(1) and § 600.735(1), Plaintiff's claims can be analyzed under M.C.L. § 600.705(2) and § 600.735(2) for fraud and misrepresentation because Plaintiff claims he was deceived by Defendants' representations that the paintings were originals. The screen printouts clearly identify the artwork in both auctions as "original," yet Defendants have stated they do not own the originals. (Defs.' Mot. to Dis., p. 6.) Plaintiff's claims can also be analyzed under M.C.L. § 600.705(5) and § 600.735(5) for breach of contract. Plaintiff has presented a prima facie case for limited jurisdiction under all three (3) clauses of both statutes.

Viewing the facts in the light most favorable to Plaintiff Dedvukaj, Plaintiff has presented a prima facie case that limited jurisdiction extends to Defendants under Michigan law.[4]

### 2. Due Process

■ Although personal jurisdiction is authorized under Michigan's "long-arm" statute, this Court cannot exercise personal jurisdiction in violation of the Due Process Clause of the Fourteenth Amendment. *Neogen*, 282 F.3d at 889. Plaintiff Dedvukaj must present a prima facie case that the exercise of personal jurisdiction does not offend due process. *CompuServe*, 89 F.3d at 1262. Plaintiff must demonstrate that Defendants have adequate "minimum contacts" with Michigan such that finding personal jurisdiction will not offend "traditional notions of fair play and substantial justice." *International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

The Sixth Circuit has articulated the due process requirements as a three-part test:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Neogen*, 282 F.3d at 889–890 (quoting *Southern Machine Company v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir.1968)).

### a. Purposeful availment

■ By way of preface to its analysis, the Court would be remiss if it did not recognize the changing nature of the world marketplace and business relationships arising out of commercial use of the internet. It is perhaps a cliché, but nonetheless true, that the internet has made the world smaller, at least insofar as facilitating communications and relationships between people. Some regard this as a good thing, as progress; others are perhaps more wary and skeptical about the "benefits" of the internet and its impact on our society. But whether a good thing or a bad thing, one thing is certain: the internet is here to stay and it will only expand

---

4. With respect to limited jurisdiction, the use of the internet presents other particular issues. These are discussed *infra* in this Opinion and Order.

as a vehicle for establishing and facilitating communications and relationships between people, both for personal and commercial purposes. To apply outmoded or overly constrained notions of legal analysis to relationships formed through the internet is to turn a blind eye to the nature of the internet itself and its use by those engaging in commerce.

Internet forums such as eBay expand the seller's market literally to the world and sellers know that, and avail themselves of the benefits of this greatly expanded marketplace. It should, in the context of these commercial relationships, be no great surprise to sellers—and certainly no unfair burden to them—if, when a commercial transaction formed over and through the internet does not meet a buyer's expectations, they might be called upon to respond in a legal forum in the buyer's home state. Sellers cannot expect to avail themselves of the benefits of the internet-created world market that they purposefully exploit and profit from without accepting the concomitant legal responsibilities that such an expanded market may bring with it.

▮ With this in mind, the Court turns to its analysis of pertinent precedent. The first step of the *Mohasco* test requires the Defendants to purposefully avail themselves of the privilege of acting in the forum state. *Neogen*, 282 F.3d at 889–890. Purposeful availment must be "something more than a passive availment of Michigan opportunities." *Khalaf v. Bankers & Shippers Ins. Co.*, 404 Mich. 134, 153–154, 273 N.W.2d 811 (1978). With regard to internet contacts, a defendant purposefully avails itself of the privilege of acting in a state if it acts through a website that "is interactive to a degree that reveals specifically intended interaction with residents of the state." *Digital Filing Systems, Inc. v. Frontier Consulting, Inc.*, 2006 WL 1663281, *3 (E.D.Mich.

2006) (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997)). However, merely maintaining a non-interactive website that is accessible within Michigan is an "attenuated" contact and, by itself, does not constitute purposeful availment. *Neogen*, 282 F.3d at 890. By contrast, an interactive website can subject the defendant to specific personal jurisdiction. *The Cadle Company v. Schlichtmann*, 123 Fed.Appx. 675, 678 (6th Cir.2005).

In the present case, Defendants sell items through internet auctions on the eBay website. Defendants argue that when any particular item is placed on the electronic auction block, all bidding is "random" and "fortuitous" because the seller cannot control whoever chooses to bid on a particular item. (Defs.' Mot. to Dis., p. 8.) Defendants argue that the contacts with the buyer will always be "attenuated" unless the auction process itself is somehow targeted or marketed to a specific forum state. *Id.* Under Defendants' logic, so long as an auction is not expressly targeted at a particular forum state, jurisdiction will only be proper in the seller's home state.

Defendants rely upon *Winfield Collection* for the proposition that the purpose of an internet auction is to allow the highest bidder to prevail and that the seller has no control over the choice of the highest bidder. *See, The Winfield Collection, Ltd. v. McCauley*, 105 F.Supp.2d 746, 749 (E.D.Mich.2000). The analysis presented in *Winfield Collection* speaks to the general terms of an internet auction, but it fails to address the threshold question of the point at which a seller will be found to have met the purposeful availment standard. The analysis, as well as Defendants' application of *Winfield* to the present case, is silent as to the impact of fraud or mis-

representation within the context of an internet auction.

*Winfield Collection* is further distinguishable from the present case because it involved copyright infringement and the parties never completed a sale to each other through an internet auction; the two eBay sales in Michigan were to third parties not involved in the litigation. *Id.* More importantly, *Winfield* predates recent Sixth Circuit case law that specifically examines personal jurisdiction based upon internet activity. *See Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883 (2002). *See also, Bird v. Parsons,* 289 F.3d 865 (2002).

In *Neogen,* the Sixth Circuit held that a Pennsylvania company was subject to limited personal jurisdiction in Michigan based on its internet activity and minimum contacts with Michigan. *Neogen,* 282 F.3d at 892–893. The Sixth Circuit examined the interactivity of the website, evaluated whether the website welcomed Michigan business, and looked at all of the defendant's contacts with the state in evaluating purposeful availment. *Id.* at 890–891. *Neogen* used the "sliding scale" of interactivity analysis introduced in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997). *Neogen,* 282 F.3d at 890. Pursuant to *Zippo,* there are generally three levels of interactivity of websites. These include: (1) purely passive sites that only offer information for the user to access; (2) active sites that clearly transact business and/or form contracts; and (3) hybrid or interactive sites that allow users to exchange information with the host computer. *Zippo Mfg. Co.,* 952 F.Supp. at 1124.

Under the *Zippo* analysis, internet auctions, by nature, are interactive. Sellers post pictures and descriptions of their items, and set the terms of the auction. Potential buyers log on to the host computer with passwords and bid competitive-

ly against one another throughout the auction. Potential buyers receive email messages generated by the site updating the status of their bids, frequently log in to monitor and increase their bids, and communicate with other buyers and sellers through the website. Successful bidders send their money to the seller and receive their newfound treasures in the mail. On the interactivity scale, the auctions constitute more than a passive website containing only posted information, and will support a finding of purposeful availment, but are probably insufficient to create purposeful availment alone. *Neogen,* 282 F.3d at 890–891.

In *Neogen,* the defendant's website held itself out as welcoming Michigan business where it stated that it would perform screening tests "for any parent in any state" and included a chart showing the graphical breakdown of results that expressly included Michigan. *Neogen,* 282 F.3d at 891. In the present case, Defendants' auction listings clearly indicated they would ship anywhere in the United States, and many parts of the world.

In *First Tennessee Nat. Corp. v. Horizon Nat. Bank,* 225 F.Supp.2d 816, 820–21 (W.D.Tenn.2002), the court was satisfied that limited personal jurisdiction in Tennessee existed over a Kansas bank, where the bank's website stated that it was approved to lend in "ALL 50 States," and permitted United States residents to obtain mortgage loans, obtain expert loan advise, and receive daily commentary.

In *Neogen,* the Sixth Circuit also noted that when potential customers from Michigan contacted the Pennsylvania defendants, the defendants "welcomed their individual business on a regular basis." *Neogen,* 282 F.3d at 891. In the present case, Defendants have welcomed business from Michigan. Defendants have a toll-free telephone number and an email ad-

dress to communicate with potential buyers, and Defendants used email messages and telephone conversations to encourage Plaintiff to bid in their auctions. Defendants also used these communications to mislead Plaintiff as to whether the paintings up for bid were originals.

Similarly, in *Morel Acoustic, Ltd. v. Morel Acoustics USA, Inc.*, 2005 WL 2211306, *7 (S.D.Ohio 2005), the court held that the existence of a website which provided specifications and prices, invited orders, provided order forms for downloading and provided an e-mail link for placing orders, together with the actual providing of products and services to customers in Ohio was prima facie evidence that the defendant purposefully availed itself of the privilege of doing business in Ohio.

The forgoing establishes that Defendants here purposefully availed themselves of the privilege of acting in Michigan. Defendants used an interactive website to sell items through internet auctions. Defendants uploaded pictures and descriptions of the items for auction, included their own terms & conditions, logos, and marketing information. Defendants sold a broad array of items presented collectively as an "eBay store." The website is interactive because of the communication between competing buyers, the seller, and competing sellers. Defendants used the website, email messages, and the telephone to communicate with potential buyers and offered a toll-free number for convenience.

Plaintiff Dedvukaj testified that he received multiple email messages from Defendants and spoke with Defendants on the telephone multiple times. Defendants held themselves out as shipping to the entire United States and most of the world, and confirmed shipping quotes before the buyers submitted payment. Defendants encouraged buyers from Michigan through communication and have accepted business and winning bids from Michigan. Defendants misled Plaintiff through communications that misrepresented the paintings available through the auction. Defendants accepted payment through the mail from Michigan including fees calculated for shipping to Michigan.

Other factors also support the intentional nature of the communications between Defendants and Michigan. The telephone conversations and emails to Plaintiff were not just general marketing calls, but discussions about the ongoing transaction. The calls were discussions of the auctions and representations regarding the items for auction that interested Plaintiff. The extent of the auction listing, the multiple photographs, the close-ups and the multiple listings as "original" as well as the extent to which Defendants personalized their auction pages with their information and logos all read on the intentional nature of the communications. Defendants are not random sellers on eBay cleaning out their attic or selling knick-knacks out of their garage. Defendants appear to be highly sophisticated sellers with an extensive offering of merchandise and a volume of business that requires a warehouse. In weighing the factors listed above, the Court finds that Defendants have purposely availed themselves of acting in Michigan.

Defendants raise the argument that the interactivity of the website and some of the email messages generated cannot be attributed to the Defendants because Defendants do not themselves operate the eBay website. While this argument might be plausible for a novice seller, it is far less so when applied to a seller of the Defendants' sophistication.

Although the Court's research has not disclosed any personal jurisdiction cases involving the use of eBay auctions as a commercial seller's primary marketing ve-

hicle, it is clear from the record that Defendants' use of eBay is regular and systemic. Defendants appear to have an eBay store offering multiple categories of merchandise, including art, antiques, clothing, jewelry, and computers. Defendants are listed as a "Power Seller," display favorable marketing statistics, and require a warehouse for their goods. Defendants offer a toll-free number and appear to have several employees. Defendants have placed extensive photographs, detailed descriptions, logos, slogans, and other marketing materials on the auction screens. It may, thus, be difficult for a novice buyer to understand where eBay stops and MrLister begins. These factors present a situation where Defendants' experience and extensive use of the eBay website entwine the two entities. Defendants benefited from the interactive nature of the eBay website because it allowed them to take advantage of automatically sent out updates on Defendants' auctions and encouraged potential buyers to pursue the items and outbid competitors. Where a knowledgeable seller has entangled itself with the eBay website for its own promotion and success, it presents a difficult argument to sever the relationship along bright lines.

In sum, viewing the facts of this case in the light most favorable to Plaintiff Dedvukaj, the Court finds that Plaintiff has presented a prima facie case that Defendants activities in Michigan constitute purposeful availment.

### b. Arising from Defendants' activities

■ The second step of the *Mohasco* personal jurisdiction test requires that the cause of action must arise from Defendants' activities within Michigan. *Neogen*, 282 F.3d at 889–890. This step is satisfied because Plaintiff's complaint stems from a breach of the contract created by submitting the winning bids for the two auctions. The activity that established purposeful availment is the same activity that gave rise to Plaintiff Dedvukaj's claim. This connection satisfies the "arising from" requirement.

### c. Substantial connection with the forum state

■ The third step of the *Mohasco* test requires that the acts of Defendants or consequences thereof have a substantial enough connection with the forum state to make the exercise of jurisdiction over the Defendants reasonable. *Neogen*, 282 F.3d at 889–890. An inference arises that the third factor is satisfied if the first two requirements are met. *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir.2002). *See also*, *CompuServe, Inc.*, 89 F.3d at 1268 (noting that "if we find, as we do, the first two elements of a prima facie case—purposeful availment and a cause of action arising from the defendant's contacts with the forum state—then an inference arises that this third factor is also present").

Furthermore, independent of the inference, Plaintiff here has alleged sufficient facts to present a prima facie case that the consequences caused by the defendant have a substantial enough connection to Michigan to make the exercise of personal jurisdiction reasonable. *Neogen* echoed *International Shoe* in its emphasis that Michigan has an interest in the regular and systemic businesses that impact the state. *Neogen*, 282 F.3d at 892. This interest is compounded in the present case by Plaintiff's fraud and misrepresentation claims.

In sum, viewing the facts in the light most favorable to Plaintiff Dedvukaj, Plaintiff has presented a prima facie case that Defendants meet the minimum contacts test and the exercise of personal jurisdiction will not offend due process.

### 3. Personal Jurisdiction Attaches

This Court's exercise of personal jurisdiction satisfies the "long-arm" statute and is thus authorized by Michigan law. Exercise of personal jurisdiction also meets the minimum contacts requirement and is thus in accordance with the Due Process Clause of the Fourteenth Amendment. Personal jurisdiction attaches to Defendants.

It follows therefore, that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is denied.

### C. Request to Transfer Venue

 Venue is proper in any judicial district in which a "substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2). The Sixth Circuit has held that in diversity of citizenship actions, the "plaintiff may file his complaint in any forum where a substantial part of the events or omissions giving rise to the claim arose." *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 263–264 (6th Cir.1998). This includes any forum with a substantial connection to the plaintiff's claim, and does not require the forum to have the most substantial connection. *Id.*

Venue is proper in the Eastern District of Michigan because a substantial part of the events or omissions occurred here. It follows, therefore, that Defendant's Request to Transfer Venue is denied.

### *CONCLUSION*

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss, or in the alternative for Change of Venue is denied in its entirety.